B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>ETRG Investments, LLC, Dan Tomlin, and Mark Scott | DEFENDANTS<br>James H. Hardee |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Newland & Associates, PLLC<br>2228 Cottondale Lane, Suite 200<br>Little Rock, AR 72202<br>(501) 221-9393 | ATTORNEYS (If Known)<br>William H. Lively, Jr., P.C.<br>432 S. Bonner Ave<br>Tyler, TX 75702<br>(903) 593-3001 |
| PARTY (Check One Box Only)<br>☐Debtor  ☐U.S. Trustee/Bankruptcy Admin<br>☒Creditor  ☐Other<br>☐Trustee | PARTY (Check One Box Only)<br>☒Debtor  ☐U.S. Trustee/Bankruptcy Admin<br>☐Creditor  ☐Other<br>☐Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint Objecting to Discharge and to Determine Dischargeability of a Debt
28 U.S.C. § 157(b)(2)(1);  28 U.S.C. § 157(a);  11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), 523(a)(6)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| | |
|---|---|
| **FRBP 7001(1) – Recovery of Money/Property**<br>☐ 11-Recovery of money/property - §542 turnover of property<br>☐ 12-Recovery of money/property - §547 preference<br>☐ 13-Recovery of money/property - §548 fraudulent transfer<br>☐ 14-Recovery of money/property - other | **FRBP 7001(6) – Dischargeability (continued)**<br>☐ 61-Dischargeability - §523(a)(5), domestic support<br>☒ 68-Dischargeability - §523(a)(6), willful and malicious injury<br>☐ 63-Dischargeability - §523(a)(8), student loan<br>☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation<br>    (other than domestic support)<br>☐ 65-Dischargeability - other |
| **FRBP 7001(2) – Validity, Priority or Extent of Lien**<br>☐ 21-Validity, priority or extent of lien or other interest in property | |
| **FRBP 7001(3) – Approval of Sale of Property**<br>☐ 31-Approval of sale of property of estate and of a co-owner - §363(h) | **FRBP 7001(7) – Injunctive Relief**<br>☐ 71-Injunctive relief – imposition of stay<br>☐ 72-Injunctive relief – other |
| **FRBP 7001(4) – Objection/Revocation of Discharge**<br>☐ 41-Objection / revocation of discharge - §727(c),(d),(e) | **FRBP 7001(8) Subordination of Claim or Interest**<br>☐ 81-Subordination of claim or interest |
| **FRBP 7001(5) – Revocation of Confirmation**<br>☐ 51-Revocation of confirmation | **FRBP 7001(9) Declaratory Judgment**<br>☐ 91-Declaratory judgment |
| **FRBP 7001(6) – Dischargeability**<br>☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims<br>☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation,<br>    actual fraud<br>☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny<br>(continued next column) | **FRBP 7001(10) Determination of Removed Action**<br>☐ 01-Determination of removed claim or cause<br><br>**Other**<br>☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.<br>☐ 02-Other (e.g. other actions that would have been brought in state court<br>    if unrelated to bankruptcy case) |
| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☒ Check if a jury trial is demanded in complaint | Demand $ approximately $1 million dollars |
| Other Relief Sought | |

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>James H. Hardee | BANKRUPTCY CASE NO.<br>11-60242 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Eastern District of Texas | DIVISION OFFICE<br>Tyler | NAME OF JUDGE<br>*Judge Parker* |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF<br>n/a | DEFENDANT<br>n/a | ADVERSARY PROCEEDING NO.<br>n/a |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>n/a | DIVISION OFFICE<br>n/a | NAME OF JUDGE<br>n/a |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*Ashlea Brown* | | |
| DATE<br>6/14/2011 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Ashlea Brown, attorney | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet. When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF TEXAS

| | | | |
|---|---|---|---|
| **IN RE:** | **JAMES H. HARDEE** | ) | |
| | **f/d/b/a ETRG** | ) | |
| | **INVESTMENTS, LLC** | ) | |
| | | ) | |
| *Debtor* | | ) | **Case No. 11-60242** |
| | | ) | |
| **ETRG INVESTMENTS, LLC,** | | ) | **Chapter 7** |
| **DAN TOMLIN, and** | | | |
| **MARK SCOTT** | | | |
| *Plaintiffs* | | | |
| | | ) | |
| | | ) | |
| **JAMES H. HARDEE f/d/b/a ETRG** | | ) | **Adv. Proc. No. _____** |
| **INVESTMENTS, LLC** | | ) | |
| *Defendant* | | ) | |
| | | ) | |

### COMPLAINT OBJECTING TO DISCHARGE AND TO DETERMINE DISCHARGEABILITY OF A DEBT

Comes now, ETRG Investments, LLC ("ETRG"), by and through its attorneys, Newland & Associates, PLLC, and for its Complaint against James H. Hardee, states and alleges as follows:

### I.      JURISDICTION

1.      This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(1), relating to the bankruptcy case currently pending under the caption of In re:  James H. Hardee f/d/b/a ETRG Investments, LLC, Case Number 11-60242, filed under Chapter 7 of the U.S. Bankruptcy Code.

2.      The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157(a).

## II.   PARTIES

3.      ETRG is a Texas Limited Liability Company with its principal place of business located in Pulaski County, Arkansas. ETRG is authorized to do business in Arkansas.   Dan Tomlin is an individual residing in Georgia. Mark Scott is an individual residing in Georgia.

4.      ETRG, Dan Tomlin, and Mark Scott bring this adversary complaint as creditors of Defendant, arising from Defendant's fraud.

5.      Defendant is an individual debtor seeking discharge of the debts upon which Plaintiff's claims are non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).

6.      Upon information and belief, Defendant is a resident of Tyler, Texas.

## III.   FACTS

7.      In 2005, Defendant asked Dan Tomlin and Mark Scott to invest in ETRG for the purpose of operating Zaxby's franchises in Pulaski County, Arkansas.

8.      Defendant represented to Mr. Tomlin and Mr. Scott that he was a very experienced restaurant manager and that he would manage the operation of the Zaxby's restaurants in Pulaski County, Arkansas with the highest degree of care.

9.      Defendant represented to Mr. Tomlin and Mr. Scott that they would receive a high return on their investment and that they would receive their principal investment back within a short period of time as a result of ETRG's operation of Zaxby's franchises.

10.     In reliance on Defendant's representations, Mr. Tomlin and Mr. Scott invested a significant amount of money into ETRG and became members of ETRG.

11.    Defendant also advised Mr. Tomlin that Defendant had obtained an SBA loan to start up the Zaxby's restaurants in Arkansas, but that it was necessary for ETRG to get a "bridge loan" for operating expenses until the SBA loan was finalized.

12.    Defendant asked Mr. Tomlin to pledge Mr. Tomlin's own real property as collateral for the "bridge loan" until the SBA loan could be finalized.

13.    Mr. Hardee represented to Mr. Tomlin that Mr. Tomlin's real property would only be pledged as collateral temporarily.

14.    ETRG was formed in January 2006 for the purpose of operating Zaxby's franchises in central Arkansas.

15.    On or about January 1, 2006, ETRG adopted Regulations to govern the operation of ETRG. A true and correct copy of the Regulations is attached hereto as Exhibit "A."

16.    Pursuant to the Regulations, ETRG was to be managed under the direction of a manager. See Exhibit A, Article 5.01(a).

17.    The Regulations named Defendant as the manager. See Exhibit A, Article 5.03.

18.    As manager, Defendant was charged with keeping accurate books and records in accordance with sound accounting practices. See Exhibit A, Article 7.01.

19.    As manager, Defendant was also required to establish and maintain one or more bank accounts for ETRG. See Exhibit A, Article 7.03.

20.    The Regulations expressly prohibited Defendant from comingling his personal funds with the funds of ETRG. See Exhibit A, Article 7.03.

21.    The Regulations also required the Defendant to obtain unanimous consent to incur any indebtedness over $100,000 on behalf of ETRG. See Exhibit A, Article 5.02.

22.     As manager, Defendant oversaw the operation of ETRG's Zaxby's franchises in Arkansas and often travelled to Arkansas to carry out his duties as manager.

23.     As manager, Defendant stood in a fiduciary capacity to ETRG and its members.

24.     As manager, Defendant was entrusted to use ETRG's funds to the benefit of ETRG and was not to use ETRG's funds for personal expenses.

25.     As manager, Defendant was responsible for all tax matters and was required to notify members of all outstanding tax issues.

26.     In the latter part of 2008, members of ETRG discovered that Defendant had intentionally converted ETRG's funds for his own personal use, failed to keep accurate accounting records, failed to file or pay ETRG's taxes, and failed to pay ETRG's debts to vendors.

27.     As a result, Defendant was removed as the manager in December 2008.

28.     Members of ETRG also discovered that Defendant had entered into an unauthorized loan with Irwin Franchise Corporation ("Irwin") on behalf of ETRG.

29.     Upon information and belief, Defendant used the funds received from the Irwin loan in an attempt to conceal his unauthorized use of ETRG's funds.

30.     Due to the extensive nature of Defendant's conversion and fraud while acting as manager of ETRG, ETRG is still uncovering and investigating all of Defendant's misappropriations.

31.     Upon information and belief, Defendant embezzled over one million dollars of ETRG's funds during his tenure as managing member.

32.     ETRG's bank records reflect that Defendant knowingly and intentionally used ETRG's funds to pay for personal expenses including, but not limited to, his home mortgage

payment, car payment, credit card, his wife's cell phone, child care, veterinarian bills, vacations, country club dues, and personal property taxes.

33.    ETRG's bank records also reflect that Defendant knowingly and intentionally used ETRG's ATM card to withdraw funds for personal use on numerous occasions.

34.    ETRG's bank records further reflect that Defendant knowingly and intentionally wrote numerous checks to himself and his wife without authorization to do so.

35.    A review of ETRG's bank records shows that Defendant knowingly and intentionally transferred ETRG's money to his personal accounts and vice versa, comingling his personal funds with ETRG's funds.

36.    In addition, ETRG's bank records reflect that Defendant authorized his wife to use ETRG's funds to pay for personal expenses.

37.    ETRG's bank records reflect that Defendant authorized his wife to use ETRG's bank account to pay for personal expenses electronically.

38.    Defendant knowingly and intentionally disguised his embezzlement of ETRG's funds from the other members of ETRG.

39.    One way that Defendant disguised his embezzlement was by submitting false financial statements to the other members of ETRG and ETRG's tax preparer.

40.    Upon information and belief, Defendant never intended for ETRG to make a profit, but only intended to use ETRG for his own personal gain to the detriment of ETRG's investors such as Mr. Tomlin and Mr. Scott.

41.    Mr. Tomlin also discovered that Defendant had never obtained or even attempted to obtain the SBA loan as he represented.

42.     Mr. Tomlin and Mr. Scott also later discovered that Defendant had been taking distributions from ETRG in violation of Article 4 of the Regulations.

43.     Mr. Tomlin and Mr. Scott have never received the return on their investment as promised by Defendant and, in fact, have had to invest even more money into ETRG to keep it operating.

44.     Mr. Tomlin's real property is still pledged as collateral for ETRG's operating loan.

45.     As a result of Defendant's embezzlement and intentional failure to pay ETRG's liabilities, ETRG faces claims from numerous creditors.

46.     As a result of Defendant's intentional failure to pay appropriate federal, state, and local taxes during his tenure as manager, ETRG may also face significant tax liabilities believed to be in excess of $450,000.

47.     ETRG has been damaged as a result of Defendant's actions.

48.     ETRG has reported Defendant's activities to the Federal Bureau of Investigation and the United States Attorney's office.

49.     On December 10, 2010, ETRG filed a lawsuit against Defendant in the Circuit Court of Pulaski County, Arkansas, Case No. CV 2010-7060, which is currently stayed due to Defendant's filing for relief under Chapter 7 of the Bankruptcy Code. A copy of said lawsuit is attached hereto as Exhibit "B." The attached lawsuit arises from Defendant's actions described herein.

50.     On December 10, 2010, Dan Tomlin filed a lawsuit against Defendant in the Circuit Court of Pulaski County, Arkansas, Case No. CV 2010-7061, which is currently stayed due to Defendant's filing for relief under Chapter 7 of the Bankruptcy Code. A copy of said

lawsuit is attached hereto as Exhibit "C." The attached lawsuit arises from Defendant's actions described herein.

51.     Defendant gave Plaintiffs a notice of his bankruptcy, but did not specifically schedule a debt owed to Plaintiffs

52.     Plaintiffs are entitled to repayment of the funds that Defendant unlawfully obtained from Plaintiffs.

53.     Plaintiffs are also entitled to judgment against Defendant in an amount to be determined at trial for the damages Defendant has caused to Plaintiffs.

### IV.     COUNT I – DEFENDANT'S DEBT TO PLAINTIFFS IS NON-DISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(a)(2)(A)

54.     Plaintiffs incorporate by reference the statements and allegations contained in Paragraphs 1 through 53.

55.     Through the actions described in this Complaint, Defendant obtained and retained money from Plaintiffs through false pretenses, false representations, and actual fraud.

56.     As a result of Defendant's actions, Plaintiffs have been damaged.

57.     Plaintiffs request that the Court enter judgment ordering that Defendant's debts owed to Plaintiffs are non-dischargeable pursuant to § 523(a)(2)(A) and excepted from any discharge Defendant might otherwise receive in the bankruptcy case related to this action.

58.     Plaintiffs request that the Court enter judgment ordering Defendant to return all money unlawfully received from Plaintiffs.

### V.     COUNT II – DEFENDANT'S DEBT TO PLAINTIFFS IS NON-DISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(a)(4)

59.     Plaintiffs incorporate by reference the statements and allegations contained in Paragraphs 1 through 58.

60.     Defendant appropriated Plaintiffs' property for a use other than that for which it was entrusted to him.

61.     Through the actions described in this Complaint, Defendant took Plaintiffs' money with the intent to convert it or deprive Plaintiffs of it.

62.     Through the actions described in this Complaint, Defendant committed fraud and defalcation while acting in a fiduciary capacity.

63.     Through the actions described in this Complaint, Defendant embezzled money from ETRG.

64.     Defendant's embezzlement was fraudulent.

65.     Through the actions described in this Complaint, Defendant committed fraud and defalcation while acting in a fiduciary capacity.

66.     Through the actions described in this Complaint, Defendant committed larceny.

67.     As a result of Defendant's actions, Plaintiffs have been damaged.

68.     Accordingly, Plaintiffs request that the Court enter judgment ordering that Defendant's debts owed to Plaintiffs are non-dischargeable pursuant to 11 U.S.C. § 523(a)(4) and excepted from any discharge Defendant might otherwise receive in the bankruptcy case related to this action.

69.     Plaintiffs request that the Court enter judgment ordering Defendant to return all money unlawfully received from Plaintiffs.

## VI.     COUNT III – DEFENDANT'S DEBT TO ETRG IS NON-DISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(a)(6)

70.     Plaintiffs incorporate by reference the statements and allegations contained in Paragraphs 1 through 69.

71.     Through the actions described in this Complaint, Defendant willfully and maliciously injured Plaintiffs.

72.     Defendant's actions described in this Complaint lack just cause or excuse.

73.     Defendant had a subjective intent to injure Plaintiffs and knew that his actions were substantially certain to result in injury to Plaintiffs.

74.     Accordingly, Plaintiffs request that the Court enter judgment ordering that Defendant's debts owed to Plaintiffs are non-dischargeable pursuant to 11 U.S.C. §523(a)(6) and excepted from any discharge Defendant might otherwise receive in the bankruptcy case related to this action.

75.     Plaintiffs request that the Court enter judgment ordering that Defendant return all money unlawfully received from Plaintiffs.

76.     Plaintiffs request that the Court enter judgment against Defendant and in favor of Plaintiffs for the damages that Plaintiffs have suffered as a result of Defendant's willful and malicious injury to Plaintiffs.

## VII.     RESERVATION OF RIGHTS

75.     Plaintiffs specifically reserve the right to bring any additional causes of action against the Defendant and to amend this Complaint as necessary.

## VII.     DEMAND FOR TRIAL BY JURY

76.     Plaintiffs demand a trial by jury on all issues so triable pursuant to Federal Rule of Bankruptcy Procedure 9015.

WHEREFORE, Plaintiffs pray that their Complaint to Determine Dischargeability be granted and that judgment be entered ordering that Defendant's debts owed to Plaintiffs are non-dischargeable and excepted from any discharge that Defendant might otherwise receive in the

bankruptcy case related to this action, that Defendant shall return money unlawfully received from Plaintiffs, that Plaintiffs be awarded their reasonable attorneys' fees and costs, and that Plaintiffs have such other relief to which it may be entitled.

Respectfully Submitted,

ETRG Investments, LLC,
Dan Tomlin, and
Mark Scott

By and through:

NEWLAND & ASSOCIATES, PLLC
2228 Cottondale Lane, Suite 200
Little Rock, AR 72202
(501) 221-9393
(501) 671-6658 (fax)

_____
Ashlea Brown
Ark. Bar No. 2007197
abrown@newlandassociatespllc.com
*Admitted Pro Hac Vice*

## VERIFICATION OF PLEADINGS

I, Dan Tomlin, state upon oath that I have read the statements contained in the foregoing pleading and they are true and correct to the best of my knowledge and belief.

Dan Tomlin

STATE OF __GA__        )

                                          )ss

COUNTY OF __Baldwin__ )


SUBSCRIBED AND SWORN to before me, a Notary Public for the County and State aforesaid, this __13__ day of __June__ , 2011.


Notary Public


My Commission Expires:  May 19, 2014

MIRANDA P. RENFROE
NOTARY
PUBLIC
MY COMMISSION
EXPIRES
MAY 19, 2014
BALDWIN COUNTY, GEORGIA

Page 11 of 12

## VERIFICATION OF PLEADINGS

I, Mark Scott, state upon oath that I have read the statements contained in the foregoing pleading and they are true and correct to the best of my knowledge and belief.

_____

Mark Scott

STATE OF __GA__ )

)ss

COUNTY OF __Baldwin__ )

SUBSCRIBED AND SWORN to before me, a Notary Public for the County and State aforesaid, this __13__ day of __June__, 2011.

_____

Notary Public

My Commission Expires: __5-19-14__

Page 12 of 12

## REGULATIONS
## OF
## ETRG INVESTMENTS, LLC,

### A Texas Limited Liability Company

These REGULATIONS of ETRG INVESTMENTS, LLC (these "Regulations"), dated effective as of January 1, 2006, are (a) adopted by the Manager (as defined in Section 6.01) and (b) executed and agreed to, for good and valuable consideration, by the Members (as defined in Section 2.01)

### ARTICLE 1
### ORGANIZATION

**1.01   Formation.** The Company has been organized as a Texas limited liability company by the filing of Limited Liability Company Certificate of Formation (the "Articles") under and pursuant to the Texas Limited Liability Company Act (as amended from time to time, the "Act") and the issuance of a certificate of organization for the Company by the Secretary of State of Texas

**1.02   Name.** The name of the Company is "ETRG INVESTMENTS, LLC" and all Company business must be conducted in that name or such other names that may be selected by the Manager and that comply with applicable law

**1.03.   Registered Office; Registered Agent; Offices.** The registered office and registered agent of the Company in the State of Texas shall be as specified in the Articles or as designated by the Manager in the manner provided by applicable law. The offices of the Company shall be at such places as the Manager may designate, which need not be in the State of Texas

**1.04.   Purposes.** The purposes of the Company are those set forth in the Articles and to engage in any other business or activity that now or hereafter may be necessary, incidental, proper, advisable, or convenient to accomplish the foregoing purposes (including obtaining financing therefor) and that is not forbidden by the laws of the jurisdiction in which the Company engages in that business

**1.05.   Foreign Qualification.** Prior to the Company's conducting business in any jurisdiction other than Texas, the Manager shall cause the Company to comply with all requirements necessary to qualify the Company as a foreign limited liability company in that jurisdiction

**1.06.   Term.** The Company commenced on the date the Secretary of State of Texas issued a certificate of organization for the Company and shall continue in existence



for the period fixed in the Articles for the duration of the Company, or such earlier time as these Regulations may specify

1.07.  **No State Law Partnership.** The Members intend that the Company may not be a partnership (including a limited partnership) or joint venture, and that no Member or Manager be a partner or joint venturer of any other Member or Manager, for any purpose other than applicable tax laws, and these Regulations may not be construed to suggest otherwise.

1.08.  **Required Interest.** A Required Interest necessary to approve any action shall be a majority in interest unless otherwise stated.

### ARTICLE 2
### MEMBERSHIP; DISPOSITIONS OF INTERESTS

2.01.  **Members; Sharing Ratios.** The members of the Company ("Members") are the persons or entities ("Persons") executing these Regulations as of the date hereof as members and each Person that is hereafter admitted to the Company as a member in accordance with these Regulations. If a Member shall have made a Disposition of all or any portion of its Membership Interest but shall have retained any rights therein, then solely with respect to the Membership Interest (or portion thereof) so disposed, all references to "Member" that appear in Article 4 and Section 6.02(b) shall be deemed to refer to the assignee of such Membership Interest. The Sharing Ratio (herein so called) of each Initial Member is set forth on Exhibit "A".

2.02.  **Dispositions of Membership Interests.** A Member may not make a sale, assignment, transfer, conveyance, gift, exchange, or other disposition (voluntarily, involuntarily or by operation of law) ("Disposition") of all or any portion of its rights or interest in the Company ("Membership Interest") other than a Disposition resulting from the death of such Member, except with the consent of all Members. Any attempted Disposition of all or any portion of a Membership Interest, other than in strict accordance with this Section 2.02, shall be null and void ab initio. A Person to whom a Membership Interest is Disposed (including as a result of the death of a Member) may be admitted to the Company as a member only with the consent of all Members; and (without limiting the generality of Section 8.02) each Member's consent may be given or withheld in the Member's sole and absolute discretion, with or without cause, and subject to such conditions as it shall deem appropriate ("Sole Discretion")  In connection with any Disposition of a Membership Interest or any portion thereof, and any admission of an assignee as a Member, the Member making such Disposition and the assignee shall furnish the Manager with such documents regarding the Disposition as the Manager may request (in form and substance satisfactory to the Manager), including a copy of the Disposition instrument, a ratification by the assignee of these Regulations (if the assignee is to be admitted as a Member), a legal opinion that the Disposition complies with applicable federal and state securities laws, and a legal opinion that the Disposition will not result in the Company's termination under Section 708 of the Internal Revenue Code of 1986 (as amended from time to time, the

"Code"). Provided, however, in the event of an allowed Disposition hereunder, HENRY HARDEE shall have the first option to acquire the Membership Interest subject to disposition at its then fair market value, as determined by an appraisal obtained and approved by a Required Interest of existing Members. The second option shall be the right of the other existing Members or to purchase pro rata such interest subject to Disposition, in the manner set forth above, i.e. fair market value and appraisal approved by a Required Interest of Members. If the seller of the disposed Membership Interest disagrees with such appraisal approved by such Required Interest, then the seller may obtain its own appraisal and in the event such appraisal is inconsistent with the Member-approved appraisal, then each appraiser shall designate a third appraiser to determine the fair market value, which appraisal shall be binding upon all parties.

2.03. **Encumbrances of Membership Interests.** A Member may not pledge, mortgage, subject to a security interest or lien, or otherwise encumber (voluntarily, involuntarily or by operation of law) all or any portion of its Membership Interest without the consent of all Members.

2.04. **Creation of Additional Membership Interests.** In the event the Manager or a Required Interest of Members recommends that additional capital is needed to conduct the affairs of Company, additional Membership Interests may be created and issued to existing Members or to other Persons, and such other Persons may be admitted to the Company as a Required Interest of Members determines and on such terms and conditions, and with such Sharing Ratios and Commitments, as a Required Interest of Members may determine at the time of admission. The Manager may reflect the admission of any new Members or the creation of any new class or group of Members in an amendment to these Regulations that need be executed only by the Manager. Further, it is recognized that the first priority for additional Membership Interests shall be to allow each existing Member to contribute capital contributions as is necessary to sustain such Member's present Sharing Ratio. In the event not all existing Members desire to contribute capital to sustain their existing Sharing Ratio, then it is recognized that such Member shall have his Sharing Ratio reduced as a result of the issuance of such additional Membership Interests. The second priority shall be to allow existing Members the first opportunity, on a pro rata basis, to share in any issuance of additional Membership Interests. As a final priority, additional Membership Interests may be issued to third parties who are not presently Members of Company.

2.05. **Withdrawal.** A Member does not have the right to withdraw from the Company; provided, however, a Member shall have the power to withdraw at any time in violation of this Section 2.05. If a Member exercises such power in violation of this Section 2.05, (a) such withdrawing member shall be liable to the Company and other Members for all monetary damages suffered by them as a result of such withdrawal; and (b) such withdrawing Member shall not have any rights under Article 5.06 of the Act. In no event shall the Company or any Member have the right, through specific performance or otherwise, to prevent a Member from withdrawing in violation of this Section 2.05.

2.06.  **Information.**  In addition to the other rights specifically set forth in these Regulations, each Member and each assignee is entitled to all information to which that Member or Assignee is entitled to have access pursuant to Article 2.22 of the Act under the circumstances and subject to the conditions therein stated

2.07.  **Liability to Third Parties.**  No Member or Manager shall be liable for the debts, obligations or liabilities of the Company, including under a judgment decree or order of a court

2.08.  **Expulsion.**  A Member may not be expelled from the Company

### ARTICLE 3
### CAPITAL CONTRIBUTIONS

3.01.  **Initial Contributions.**  It is recognized that initial capital contributions were made contemporaneous with the formation of Company

3.02.  **Additional Capital Contributions.**  It is recognized that no Member shall be required to contribute additional Capital Contributions  However, it is recognized that in the event additional Capital Contributions are required as set forth in Section 2.04, the effect of a Member not contributing such additional Capital Contributions may result in a dilution of such Member's interest

3.03.  **Return of Contributions.**  A Member is not entitled to the return of any part of its Capital Contribution or to be paid interest in respect of either its capital account or its Capital Contributions  An unpaid Capital Contribution is not a liability of the Company or of any Member  A Member is not required to contribute or to lend any cash or property to the Company to enable the Company to return any Member's Capital Contributions

3.04.  **Advances by Members.**  If the Company does not have sufficient cash to pay its obligations 'and in the event the Company is unable to obtain additional Capital Contributions to allow Company to pay its obligations, then any Member(s) that may agree to do so with the consent of the Manager may advance all or part of the needed funds to or on behalf of the Company, at a rate per annum equal to the lesser of (A) the maximum rate permitted by applicable law and (B) 2% plus the interest rate publicly quoted by the *Wall Street Journal* from time to time as its prime commercial or similar reference interest rate, with adjustments to be made on the same date as any change in that rate  An advance described in this Section 3 05 constitutes a loan from the Member to the Company and is not a Capital Contribution

### ARTICLE 4
### DISTRIBUTIONS AND ALLOCATIONS

Allocations shall be made to the Capital Account of each Member in proportion to the/its Sharing Ratio and distributions shall be made to each Member in proportion to his/its

Capital Account. Provided, however, HENRY HARDEE shall not participate in any distributions until the other Initial Members have received distributions equal to 140% of capital contributed by such Initial Members.

## ARTICLE 5
## MANAGEMENT

5.01   Management by Manager. (a)  The powers of the Company shall be exercised by or under the authority of, and the business and affairs of the Company shall be managed under the direction of, a manager of the Company ("Manager"), (whose number shall be one (1). No Member in its capacity as a Member has the right, power, or authority to act for or on behalf of the Company, to do any act that would be binding on the Company, or to incur any expenditures on behalf of the Company.

(b)   In managing the business and affairs of the Company and exercising its powers, the Manager shall act individually and/or through individual officers to which authorities and duties have been delegated pursuant to Section 5.08. No Manager has the right, power, or authority to act for or on behalf of the Company, to do any act that would be binding on the Company, or to incur any expenditures on behalf of the Company, except in accordance with the immediately preceding sentence. Decisions or actions taken by the Manager in accordance with these Regulations (including this Section 5.01 and Section 5.02) shall constitute decisions or actions by the Company and shall be binding on the Manager, Member, Officer (as defined in Section 5.08), and employee of the Company.

5.02   Decisions Requiring Member Consent.  Notwithstanding any power or authority granted to managers under the Act, the Articles or these Regulations (including Section 5.01), (a) the Manager may not make any decision or take any action for which the Members'-required consent is expressly required by the Articles or these Regulations, without first obtaining such consent, and (b) the Manager may not make any decision or take any action specified below without first obtaining the required consent of Members:

1   Acquisition or disposal of any asset over $100,000.00;
2   Incurring any indebtedness over $100,000.00; and
3   Calls for subsequent capital contributions.

Each Member may, with respect to any vote, consent or approval that is entitled to grant pursuant to this Agreement, grant or withhold such consent or approval in his sole discretion.

5.03   Selection of Manager.  The Initial Manager shall be HENRY HARDEE. The term of service for HENRY HARDEE shall be for as long as he is legally competent and able to hold such office. At such time as HENRY HARDEE is unable or unwilling to serve as Manager of the Company or in the event he is removed as Manager, which may be accomplished by a vote of a Required Interest of Members (excluding the voting of HENRY HARDEE), MARK A. SCOTT and DONALD SCOTT ROBERTS shall be designated as

Managers of the Company, and the number of Managers shall increase hereunder to two (2)  If either of same are unable or unwilling to serve as a Manager of the Company, the holders of a Required Interest in Company shall elect a successor Manager to serve in his place.

5.04.  Meetings of Members.  An annual meeting of the Members for the transaction of such business as may properly come before the meeting shall be held on such date and at such times as the Manager shall specify in the notice of the meeting, which shall be delivered to each Member at least 20 days prior to such meeting  Special meetings of the Members may be called by the Manager or by Members having among them at least ten percent (10%) of the Sharing Ratios of all Members  Any such meeting shall be held on such date and at such time as the Person calling such meeting shall specify in the notice of the meeting, which shall be delivered to each Member at least ten (10) days prior to such meeting  Only business within the purpose or purposes described in the notice (or waiver thereof) for such meeting may be conducted at such meeting  Unless otherwise expressly provided in these Regulations, at any meeting of the Members, Members holding among them at least a majority of all Sharing Ratios (a "Majority Interest"), represented either in person or by proxy, shall constitute a quorum for the transaction of business, and an act of a Majority Interest shall be the act of the Members

5.05.  Provisions Applicable to All Meetings  In connection with any meeting of the Manager or Members, the following provisions shall apply: .

(a)    Place of Meeting  Any such meeting shall be held at the principal place of business of the Company, unless the notice of such meeting (or resolution of the Manager or committee, as applicable) specifies a different place, which need not be in the State of Texas

(b)    Waiver of Notice Through Attendance  Attendance of a Person at such meeting shall constitute a waiver of notice of such meeting, except where such Person attends the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

(c)    Proxies  A Person may vote at such meeting by a written proxy executed by that Person and delivered to another Manager, Member, or member of the committee, as applicable  A proxy shall be revocable unless it is stated to be irrevocable

(d)    Action by Written Consent  Any action required or permitted to be taken at such meeting may be taken without a meeting, without prior notice, and without a vote if a consent or consents in writing, setting forth the action so taken, is signed by the Manager, Members, or members of the committee, as applicable, having not fewer than the minimum number of Sharing Ratios or votes that would be necessary to take the action at a meeting at which all Members, the Manager, or members of the committee, as applicable, entitled to vote on the action were present and voted

(e)   Meetings by Telephone   The Manager, Members, or members of the committee, as applicable, may participate in and hold such meeting by means of conference telephone, videoconference, or similar communications equipment by means of which all Persons participating in the meeting can hear each other

5.06.   Officers.  The Manager shall elect at least annually officers of the Company to serve as President, Vice President and Secretary/Treasurer   Unless the Manager decides otherwise, the assignment of such title shall constitute the delegation to such officer of the authority and duties that are normally associated with that office, subject to any specified delegation of authority and duties made by the Manager   Any number of titles may be held by the same Manager  Any officer may be removed as such, either with or without cause, by the Manager

5.07.   Limitations on Liability of Manager.  The liability of the Manager to the Company and the Members shall be limited to the extent, if any, set forth in the Articles'

5.08.   Conflicts of Interest   Subject to the other express provisions of these Regulations, each Member, Manager, Officer, or affiliate thereof may engage in and possess interests in other business ventures of any and every type and description, independently or with others, including ones in competition with the Company, with no obligation to offer to the Company or any other Member, Manager, or Officer the right to participate therein  The Company may transact business with any Member, Manager, Officer, or Affiliate thereof, provided the terms of those transactions are no less favorable than those the Company could obtain from unrelated third parties

5.09.   Indemnification Reimbursement of Expenses; Insurance.  To the fullest extent permitted by the Act:  (a) the Company shall indemnify each Manager who was, is, or is threatened to be made a party to any threatened, pending, or completed action, suit, or proceeding ("Proceeding"), any appeal therein, or any inquiry or investigation preliminary thereto, by reason of the fact that he or she is or was a Manager; (b) the Company shall pay or reimburse a Manager for expenses incurred by him or her (i) in advance of the final disposition of a Proceeding to which such Manager was, is, or is threatened to be made a party, and (ii) in connection with his or her appearance as a witness or other participation in any Proceeding.  The Company shall indemnify and advance expenses to an Officer of the Company to the extent required to do so by the Act or other applicable law  The Company, by adoption of a resolution of the Manager, may indemnify and advance expenses to an Officer, employee, or agent of the Company to the same extent and subject to the same conditions under which it may indemnify and advance expenses to the Manager under the preceding sentence  The provisions of this Section 6 09 shall not be exclusive of any other right under any law, provision of the Articles or these Regulations, agreement, or otherwise  The Company may purchase and maintain insurance to protect itself and any Manager, Officer, employee, or agent of the Company, whether or not the Company would have the power to indemnify such Person under this Section 6 09.  Notwithstanding any other provision of these Regulations or the Company's Articles of Organization to the contrary, no Member, Manager, officer, employee or agent of the

Company will be entitled to be indemnified against any act or failure to act as to which it is found by a court of competent jurisdiction involving the gross negligence or intentional misconduct of such Member, Manager, officer, employee or agent of the Company

## ARTICLE 6
## TAXES

**6.01.  Tax Returns.** The Company shall prepare and timely file all federal, state, and local tax returns required to be filed by the Company  Each Member shall furnish to the Company all pertinent information in its possession relating to the Company's operations that is necessary to enable the Company's tax returns to be timely prepared and filed.  The Company shall deliver a copy of each such return to the Members on or before ten (10) days prior to the due date of any such return, together with such additional information as may be required by the Members in order for the Members to file their individual returns reflecting the Company's operations  The Company shall bear the costs of the preparation and filing of its returns

**6.02.  Tax Elections.**  The Company shall make the following elections on the appropriate tax returns:

(a)    to adopt the calendar year as the Company's fiscal year;

(b)    to adopt the cash method of accounting and to keep the Company's books and records on the income-tax method;

(c)    If a distribution of the Company's property as described in Code Section 734 occurs or upon a transfer of Membership Interests as described in Code Section 743, on request by notice from any Member, to elect, pursuant to Code Section 754, to adjust the basis of Company's properties;

(d)    to elect to amortize the organizational expenses of the Company ratably over a period of sixty (60) months as permitted by Code Section 709(b); and

(e)    any other election the Manager may deem appropriate and in the best interests of the Members

Neither the Company nor any Manager or Member may make an election for the Company to be excluded from the application of the provisions of subchapter K of chapter 1 of subtitle A of the Code or any similar provisions of applicable state law and no provision of these Regulations (including Section 1 07) shall be construed in sanction or approve such an election

**6.03.  Tax Matters Member.**  HENRY HARDEE shall be designated as the "tax matters member" of the Company pursuant to Code Section 6231(a)(7) (the "Tax Matters Member")  The Tax Matters Member shall take such action as may be necessary to cause

to the extent possible each other Member to become a "notice partner" within the meaning of Code Section 6223. The Tax Matters Member shall inform each other Member of all significant matters that may come to its attention in its capacity as Tax Matters Member by giving notice thereof on or before the fifth business day after becoming aware thereof and, within that time, shall forward to each other Member copies of all significant written communications it may receive in that capacity. The Tax Matters Member shall take no action as may be required by applicable law. Any cost or expense incurred by the Tax Matters Member in connection with its duties, including the preparation for or pursuance of administrative or judicial proceedings, shall be paid by the Company.

## ARTICLE 7
### BOOKS, RECORDS, AND BANK ACCOUNTS

7.01.  Maintenance of Books.  The Manager shall keep or cause to be kept at the principal office of the Company complete and accurate books and records of the Company, supporting documentation of the transactions with respect to the conduct of the Company's business, and minutes of the proceedings of the Manager, Members, and each committee of the Manager.  The books and records shall be maintained with respect to accounting matters in accordance with sound accounting practices, and all books and records shall be available at the Company's principal office for examination by any Member or the Member's duly authorized representative at any and all reasonable times during normal business hours.

7.02.  Reports.  Within seventy-five days after the end of each taxable year, the Manager shall cause to be sent to each Member an end of the taxable year a complete accounting of the financial affairs of the Company for the taxable year then ended.

7.03.  Accounts.  The Manager shall establish one or more separate bank and investment accounts and arrangements for the Company, which shall be maintained in the Company's name with financial institutions and firms that the Manager, with the consent of a Majority Interest, determine.  The Manager may not mingle the Company's funds with the funds of the Manager or member.

## ARTICLE 8
### DISSOLUTION, WINDING UP, AND TERMINATION

8.01.  Dissolution.  (a) Subject to Section 8.01(b), the Company shall dissolve and its affairs shall be wound up on the first to occur of the following events:

(i)     the expiration of the period fixed for the duration of the Company in the Articles;

(ii)    the unanimous consent of the Members;

(iii)    the death, expulsion, withdrawal, dissolution, or Bankruptcy of any Manager that is a Member, or the occurrence of any other event that terminates the continued membership in the Company of any Manager that is a Member;

(iv)    entry of a decree of judicial dissolution of the Company under Article 8.02 of the Act.

(b)    If an event described in subparagraphs (i) or (iii) shall occur and there shall be at least two other Members remaining, the Company shall not be dissolved, and the business of the Company shall be continued, if remaining Members holding among them both (i) a majority of the profits interests in the Company (as defined in Rev. Proc. 94-96, 1994-28 I.R.B. 129) held by the remaining members and (ii) a majority of the capital interests in the Company (as defined in such Rev. Proc. 94-96) held by the remaining Members, so agree within 90 days of the occurrence of such event. If such election is made following the occurrence of an event described in subparagraph (i) or (v) of Section 8.01(a), the Manager shall promptly amend the Articles in the manner described in Article 8.01(B) of the Act.

(c)    As used herein, the term "Bankrupt" shall mean, with respect to any Person, that (i) such Person (A) makes a general assignment for the benefit of creditors; (B) files a voluntary bankruptcy petition; (C) becomes the subject of an order for relief or is declared insolvent in any federal or state bankruptcy or insolvency proceedings; (D) files a petition or answer seeking for such Person a reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any applicable law; (E) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against such Person in a proceeding of the type described in subclauses (A) through (D) of this clause (i); or (F) seeks, consents to, or acquiesces in the appointment of a trustee, receiver, or liquidator of such Person's or of all or any substantial part of such Person's properties; or (ii) against such Person, a proceeding seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any applicable law has been commenced and 120 days have expired without dismissal thereof or with respect to which, without such Person's consent or acquiescence, a trustee, receiver, or liquidator of such Person or of all or any substantial part of such Person's properties has been appointed and 90 days have expired without the appointment having been vacated or stayed.

8.02.    Winding Up and Termination.    (a) On the occurrence of an event described in Section 8.01(a), unless an election is made to continue the business of the Company pursuant to Section 8.01(b), the Manager shall act as liquidator or may appoint one or more Members as liquidator; provided, however, that (i) no Member with respect to whom an event described in subparagraph (iii) of Section 8.01(a) has occurred shall serve as (or act with any other Person as) a liquidator, either in its capacity as a Member or (if applicable) a Manager, and (ii) if application of the foregoing clause (i) results in there being no liquidator, then the liquidator shall be selected by a Majority Interest of Members (calculated without reference to any Member referred to in such clause (i)). The liquidator

shall proceed diligently to wind up the affairs of the Company as provided in the Act. Until final distribution, the liquidator shall continue to operate the Company properties with all of the power and authority of the Manager. The costs of winding up shall be borne as a Company expense.

(b) Any assets of the Company remaining at the conclusion of the winding up process shall be distributed among the Members in accordance with their Sharing Ratios. All distributions in kind to the Members shall be made subject to the liability of each distributee for costs, expenses, and liabilities theretofore incurred for which the Company has committed prior to the date of termination. The distribution of cash and/or property to a Member in accordance with the provisions of this Section 8.02(b) constitutes a complete return to the Member of its Capital Contributions and a complete distribution to the Member of its Membership Interest and all the Company's property and constitutes a compromise to which all Members have consented.

(c) On completion of such final distribution, the Manager shall file the Articles of Dissolution with the Secretary of State of Texas, cancel any other filings made pursuant to Section 1.08, and take such other actions as may be necessary to terminate the existence of the Company.

8.03. No Restoration of Deficit Capital Balances. No Member shall be required to pay to the Company, to any other Member or to any third party any deficit balance that may exist from time to time in any capital or similar account maintained for such Member for any purpose.

## ARTICLE 9
## GENERAL PROVISIONS

9.01. Offset. Whenever the Company is to pay any sum to any Member, any amounts that Member owes the Company may be deducted from that sum before payment.

9.02. Notices. All notices, requests, or consents under these Regulations shall be (a) in writing, (b) delivered to the recipient in person, by courier or mail or by facsimile, telegram, telex, cablegram, or similar transmission, (c) if to a Member, delivered to such Member at the applicable address on Exhibit "A" or such other address as that Member may specify by notice to the other Members, (d) if to the Manager or the company, delivered to the Manager and (e) effective only upon actual receipt by such Person. Whenever any notice is required to be given by applicable law, the Articles, or these Regulations, a written waiver thereof, signed by the Person entitled to notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice.

9.03. Entire Agreement; Supersedure. These Regulations constitute the entire agreement of the Members relating to the Company and supersedes all prior contracts or agreements with respect to the company, whether oral or written.

REGULATIONS OF LING INVESTMENTS LLC PAGE 21 OF 23

DEC/27/2010/MON 12:30 PM                          FAX No.                                    P. 022

9.04.  Effect of Waiver or Consent  A waiver or consent, express or implied, to or of any breach or default by any Person in the performance by that Person of its obligations with respect to the Company is not a consent or waiver to or of any other breach or default in the performance by that Person of the same or any other obligations of that Person with respect to the Company

9.05  Amendments of Articles and Regulations  The Articles and these Regulations may be amended or restated only with the approval of the Manager and all of the Members

9.06.  Binding Effect  Subject to the restrictions on Dispositions set forth in these Regulations, these Regulations are binding on and inure to the benefit of the Members and their respective heirs, legal representatives, successors, and assigns

9.07.  Governing Law; Severability.  THESE REGULATIONS ARE GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS (EXCLUDING ITS CONFLICT OF-LAW RULES)  If any provision of these Regulations or the application thereof to any Person or circumstances is held invalid or unenforceable to any extent, the remainder of these Regulations and the application of that provision to other Persons or circumstances is not affected thereby and that provision shall be enforced to the greatest extent permitted by applicable law

9.08.  Construction.  Unless the context requires otherwise; (a) the gender (or lack of gender) of all words used in these Regulations includes the masculine, feminine, and neuter; (b) the word "including" means "including, without limitation"; (c) references to Articles and Sections refer to Articles and Sections of these Regulations; and (d) references to Exhibits are to the Exhibits attached to these Regulations, each of which is made a part hereof for all purposes

9.09.  Further Assurances.  In connection with these Regulations and the transactions contemplated hereby, each Member shall execute and deliver any additional documents and instruments and perform any additional acts that may be necessary or appropriate to effectuate and perform the provisions of these Regulations and those transactions

9.10.  Counterparts  These Regulations may be executed in any number of counterparts, all of which shall constitute the same instrument

IN WITNESS WHEREOF, following adoption of these Regulations by the Manager, the Initial Manager has executed these Regulations as of the date first set forth above

HENRY HARDEE

CONFIDENTIAL MANAGING INVESTMENTS

REGULATIONS OF ETAS INVESTMENTS LLC                                           PAGE 18 OF 18

## EXHIBIT "A"
### INITIAL MEMBERS

| MEMBER | CAPITAL CONTRIBUTION | UNITS OWNED | SHARING RATIO |
|---|---|---|---|
| JAMES HENRY HARDEE | Labor contributed | 10 | 25 0% |
| DONALD SCOTT ROBERTS | $77,500.00 | 5 | 12.5% |
| CHRISTOPHER Y AI FORD | $46,500.00 | 3 | 7.5% |
| MICHAEL SCOTT & JENNIFER DEASON | $15,500.00 | 1 | 2.5% |
| SUSAN MCDANEL DEASON | $31,000.00 | 2 | 5.0% |
| DAN TURNER TOMLIN | $93,000.00 | 6 | 15.0% |
| BRADLEY SHAWN ROBERTS | $62,000.00 | 4 | 10.0% |
| MARK A SCOTT | $77,500.00 | 5 | 12.5% |
| DENNIS D WOOD | $62,000.00 | 4 | 10.0% |
| TOTAL: | | | 100.0% |

IT IS UNDERSTOOD AND RECOGNIZED THAT SUCH CAPITAL CONTRIBUTIONS AS SET FORTH ABOVE SHALL BE CONTRIBUTED UPON WRITTEN REQUEST AND NOTIFICATION BY MANAGER, HENRY HARDEE.

## FIRST AMENDMENT TO REGULATIONS OF
## ETRG INVESTMENTS, LLC

The undersigned, constituting the Manager and all Members of ETRG INVESTMENTS, LLC, desire to amend Article 2.02 of the Regulations of ETRG INVESTMENTS, LLC, pursuant to Article 9.05 of the Regulations.

Article 2.02 is hereby amended to read as follows:

"2.02. Dispositions of Membership Interests. A Member may not make a sale, assignment, transfer, conveyance, gift, exchange, or other disposition (voluntarily, involuntarily or by operation of law) ("Disposition") of all or any portion of its rights or interest in the Company ("Membership Interest") other than a Disposition resulting from the death of such Member, except with the consent of all Members. Any attempted Disposition of all or any portion of a Membership Interest, other than in strict accordance with this Section 2.02, shall be null and void ab initio. A Person to whom a Membership Interest is Disposed (including as a result of the death of a Member) may be admitted to the Company as a member only with the consent of all Members; and (without limiting the generality of Section 6.03) each Member's consent may be given or withheld in the Member's sole and absolute discretion, with or without cause, and subject to such conditions as it shall deem appropriate ("Sole Discretion"). In connection with any Disposition of a Membership Interest or any portion thereof, and any admission of an assignee as a Member, the Member making such Disposition and the assignee shall furnish the Manager with such documents regarding the Disposition as the Manager may request (in form and substance satisfactory to the Manager), including a copy of the Disposition instrument, a ratification by the assignee of these Regulations (if the assignee is to be admitted as a Member), a legal opinion that the Disposition complies with applicable federal and state securities laws, and a legal opinion that the Disposition will not result in the Company's termination under Section 708 of the Internal Revenue Code of 1986 (as amended from time to time, the "Code"). Provided, however, in the event of an allowed Disposition hereunder, the Members shall have the right to purchase pro rata such interest subject to disposition, at its then fair market value, as determined by an appraisal obtained and approved by a Required Interest of existing Members. If the seller of the disposed Membership Interest disagrees with such appraisal approved by such Required Interest, then the seller may obtain its own appraisal and in the event such appraisal is inconsistent with the Member-approved appraisal, then each appraiser shall designate a third appraiser to determine the fair market value, which appraisal shall be binding upon all parties."

Other than this amendment, the existing Regulations of ETRG INVESTMENTS, LLC shall remain in full force and effect.

EXECUTED EFFECTIVE December 16, 2008

JAMES HENRY HARDEE, Manager/Member

DONALD SCOTT ROBERTS, Member

CHRISTOPHER T ALFORD, Member

MICHAEL SCOTT, Member
DEASON

JENNIFER DEASON, Member

SUSAN MCDANIEL DEASON, Member

DAN TURNER TOMLIN, Member

BRADLEY SHAWN ROBERTS, Member

MARK A SCOTT, Member

DENNIS D WOOD, Member

JOHNS WADE/ND-REG-ET/AG INVESTMENTS

FIRST AMENDMENT TO REGULATIONS OF ERG INVESTMENTS, LLC                    PAGE 1 OF 2

# IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## 2ND DIVISION

ETRG INVESTMENTS, LLC                                          **PLAINTIFF**

VS.         **60 CV 2010 -7060**     FILED 12/10/10 16:31:40
                                     Pat 'Brien Pulaski Circuit Clerk
                                     MJ
**JAMES HENRY HARDEE**                                         **DEFENDANT**

## COMPLAINT

Comes now, ETRG Investments, LLC ("ETRG"), by and through its attorneys, Newland & Associates, PLLC, and for its Complaint against James Henry Hardee, states as follows:

### I. PARTIES

1. ETRG is a Texas Limited Liability Company authorized to do business in Arkansas. ETRG's principal place of business is in Little Rock, Pulaski County, Arkansas.

2. Upon information and belief, Defendant is a resident of Tyler, Texas. While acting as manager of ETRG, Defendant had significant contacts with the State of Arkansas, including but not limited to travelling to Arkansas to manage and operate restaurants owned by ETRG in Arkansas.

### II. JURISDICTION AND VENUE

3. Jurisdiction is proper pursuant to Ark. Code Ann. § 16-13-201.

4. Venue is proper pursuant to Ark. Code Ann. §§ 16-60-113, 16-55-213, and 16-60-108.

### III. FACTS

5. ETRG was formed in January 2006 for the purpose of operating Zaxby's franchises in central Arkansas.

Page 1 of 8


EXHIBIT
B


60CV-10-7060      601-6010@012190-097
ETRG INVESTMENTS LLC V JAME 22 Pages
PULASKI CO        12/10/2010 04:31 PM
CIRCUIT COURT                    CC05$

6. On or about January 1, 2006, ETRG adopted Regulations to govern the operation of ETRG. A true and correct copy of the Regulations is attached hereto as Exhibit "A."

7. Pursuant to the Regulations, ETRG was to be managed under the direction of a manager. *See* Exhibit A, Article 5.01(a).

8. The Regulations named Defendant as the manager. *See* Exhibit A, Article 5.03.

9. As manager, Defendant was charged with keeping accurate books and records in accordance with sound accounting practices. *See* Exhibit A, Article 7.01.

10. As manager, Defendant was also required to establish and maintain one or more bank accounts for ETRG. *See* Exhibit A, Article 7.03.

11. The Regulations expressly prohibited Defendant from comingling his personal funds with the funds of ETRG. *See* Exhibit A, Article 7.03.

12. The Regulations also required the Defendant to obtain unanimous consent to incur any indebtedness over $100,000 on behalf of ETRG. *See* Exhibit A, Article 5.02.

13. As manager, Defendant oversaw the operation of ETRG's Zaxby's franchises in Arkansas and often travelled to Arkansas to carry out his duties as manager.

14. In the latter part of 2008, other members of ETRG discovered that Defendant had been misappropriating ETRG's funds for his own personal use, failing to keep accurate accounting records, failing to pay taxes, and failing to pay ETRG's debts to vendors.

15. As a result, Defendant was removed as the manager in December 2008.

16. Members of ETRG also discovered that Defendant had entered into an unauthorized loan with Irwin Franchise Corporation ("Irwin") on behalf of ETRG.

17. Upon information and belief, Defendant used the funds received from the Irwin loan in an attempt to conceal his unauthorized use of ETRG's funds.

18. Due to the extensive nature of Defendant's conversion and fraud while acting as manager of ETRG, ETRG is still uncovering and investigating all of Defendant's misappropriations.

19. Upon information and belief, Defendant embezzled over one million dollars of ETRG's funds during his tenure as managing member.

20. ETRG's bank records reflect that Defendant used ETRG's funds to pay for personal expenses including, but not limited to, his home mortgage payment, car payment, credit card, his wife's cell phone, child care, and veterinarian bills.

21. ETRG's bank records also reflect that Defendant used ETRG's ATM card to withdraw funds for personal use on numerous occasions.

22. ETRG's bank records further reflect that Defendant wrote numerous checks to himself.

23. A review of ETRG's bank records shows that Defendant transferred ETRG's money to his personal accounts and vice versa, comingling his personal funds with ETRG's funds.

24. In addition, ETRG's bank records reflect that Defendant's wife used ETRG's funds to pay for personal expenses.

25. ETRG's bank records reflect that Defendant authorized his wife to use ETRG's bank account to pay for personal expenses electronically.

26. To disguise his embezzlement, Defendant submitted false financial statements to the other members of ETRG and ETRG's tax preparer.

27. ETRG has reported Defendant's activities to the Federal Bureau of Investigation and the United States Attorney's office.

28. As a result of Defendant's embezzlement and failure to pay ETRG's liabilities, ETRG faces claims from numerous creditors.

29. As a result of Defendant's failure to pay appropriate state and local taxes during his tenure as manager, ETRG may also face significant tax liabilities.

### IV. COUNT I – BREACH OF FIDUCIARY DUTY

30. ETRG incorporates by reference all allegations contained in Paragraphs 1 through 29 of this Complaint.

31. As a member of ETRG, Defendant owed a fiduciary duty to ETRG.

32. Defendant's willful and conscious decision to convert the assets of ETRG to his own use constitutes a breach of his fiduciary duty.

33. Likewise, Defendant's willful and conscious decision to comingle ETRG's funds with his personal funds in direct contravention of ETRG's Regulations constitutes a breach of his fiduciary duty.

34. Defendant's willful and intentional failure to maintain accurate records in direct contravention of ETRG's Regulations also constitutes a breach of his fiduciary duty.

35. Defendant's willful and intentional failure to pay appropriate state and local taxes on behalf of ETRG also constitutes a breach of his fiduciary duty.

36. Defendant's willful and intentional failure to obtain consent of the other members of ETRG before taking out the loan with Irwin also constitutes a breach of his fiduciary duty.

37. As a direct and proximate result of Defendant's breach of fiduciary duty, ETRG was damaged in an amount to be determined at trial that is in excess of that required for federal diversity jurisdiction.

## V.  COUNT II – CONVERSION

38. ETRG incorporates by reference all allegations contained in Paragraphs 1 through 37 of this Complaint.

39. Defendant used ETRG's funds to pay for personal expenses.

40. Defendant also authorized his wife to use ETRG's funds to pay for personal expenses.

41. ETRG did not authorize Defendant or his wife to use ETRG's funds for personal use.

42. By using ETRG's funds to pay for personal expenses and allowing his wife to do the same, Defendant improperly exercised control over ETRG's funds, in violation of ETRG's interests.

43. Defendant intentionally took control over ETRG's funds to pay for his and his wife's personal expense for the purpose of violating ETRG's rights to its own property or for the purpose of causing damage to ETRG.

44. As a direct and proximate result of Defendant's willful and intentional misconduct, ETRG has been damaged in an amount to be determined at trial that is in excess of that required for federal diversity jurisdiction.

## VI. COUNT III – FRAUD

45. ETRG incorporates by reference all allegations contained in Paragraphs 1 through 44 of this Complaint.

46. Defendant made a practice of using ETRG's funds to pay for personal expenses.

47. Defendant also authorized his wife to use ETRG funds to pay for personal expenses.

48. Defendant also purposefully took out an unauthorized loan in ETRG's name to cover up his conversion.

49. Defendant purposefully falsified ETRG's financial statements and misrepresented the financial condition of ETRG to cover up his conversion.

50. Defendant knew that the misrepresentations made in ETRG's financial statements were false.

51. Defendant made these misrepresentations with the intent to cover up his embezzlement and thereby defrauding ETRG.

52. In reliance on Defendant's misrepresentations and intentional misconduct, the other members of ETRG justifiably believed that ETRG was financially sound and refrained from investigating Defendant's management of ETRG.

53. As a result of Defendant's material misrepresentations, ETRG has been damaged in an amount to be determined at trial that is in excess of that required for federal diversity jurisdiction.

54. As a result of Defendant's material misrepresentations, ETRG is entitled to punitive damages in amount to be determined at trial.

## VII.   COUNT IV – UNJUST ENRICHMENT

55. ETRG incorporates by reference the allegations contained in Paragraphs 1 through 54 of this Complaint.

56. Defendant used ETRG's funds for to pay for personal expenses.

57. Defendant had neither the authority nor permission to use ETRG's funds to pay for personal expenses.

58. Defendant has been unjustly enriched by using ETRG's funds to pay for personal expenses.

59. ETRG has been damaged in an amount to be determined at trial that is in excess of that required for federal diversity jurisdiction.

## VIII.   PUNITIVE DAMAGES

60.   ETRG incorporates by reference the allegations contained in Paragraphs 1 through 59 of this Complaint.

61.   Defendant knew that he was acting against the interest of ETRG, he knew that his actions would cause damage to ETRG, yet he continued to act in reckless disregard of his knowledge that his actions were against the best interest of ETRG and would damage ETRG.

62.   Therefore, punitive damages in an amount to be determined by the jury should be imposed upon him to punish him and to deter others similarly situated.

WHEREFORE, Plaintiff, ETRG Investments, LLC, request that it be awarded compensatory damages and consequential damages in an amount to be determined at trial that is in excess of that required for federal diversity jurisdiction, punitive damages sufficient to deter

James Henry Hardee from engaging in this type of conduct in the future, and its costs and attorneys' fees and all other just and proper relief to which it may be entitled.

Respectfully Submitted,

ETRG Investments, LLC

By and through:

NEWLAND & ASSOCIATES, PLLC
2228 Cottondale Lane, Suite 200
Little Rock, AR 72202
(501) 221-9393
(501) 221-7058 (fax)

Ashlea Brown, Ark. Bar No. 2007197
J. Richard Newland, Ark. Bar # 2000157

Page 8 of 8

REGULATIONS
OF
ETRG INVESTMENTS, LLC,

A Texas Limited Liability Company

These REGULATIONS of ETRG INVESTMENTS, LLC (these "Regulations"), dated effective as of January 1, 2008, are (a) adopted by the Manager (as defined in Section 5.01) and (b) executed and agreed to, for good and valuable consideration, by the Members (as defined in Section 2.01).

## ARTICLE 1
## ORGANIZATION

1.01   Formation.   The Company has been organized as a Texas limited liability company by the filing of Limited Liability Company Certificate of Formation (the "Articles") under and pursuant to the Texas Limited Liability Company Act (as amended from time to time, the "Act") and the issuance of a certificate of organization for the Company by the Secretary of State of Texas

1.02   Name   The name of the Company is "ETRG INVESTMENTS, LLC" and all Company business must be conducted in that name or such other names that may be selected by the Manager and that comply with applicable law

1.03.   Registered Office; Registered Agent; Offices.   The registered office and registered agent of the Company in the State of Texas shall be as specified in the Articles or as designated by the Manager in the manner provided by applicable law   The offices of the Company shall be at such places as the Manager may designate, which need not be in the State of Texas

1.04.   Purposes.   The purposes of the Company are those set forth in the Articles and to engage in any other business or activity that now or hereafter may be necessary, incidental, proper, advisable, or convenient to accomplish the foregoing purposes (including obtaining financing therefor) and that is not forbidden by the laws of the jurisdiction in which the Company engages in that business

1.05.   Foreign Qualification.   Prior to the Company's conducting business in any jurisdiction other than Texas, the Manager shall cause the Company to comply with all requirements necessary to qualify the Company as a foreign limited liability company in that jurisdiction

1.06.   Term.   The Company commenced on the date the Secretary of State of Texas issued a certificate of organization for the Company and shall continue in existence

for the period fixed in the Articles for the duration of the Company, or such earlier time as these Regulations may specify

**1 07.** **No State-Law Partnership.** The Members intend that the Company may not be a partnership (including a limited partnership) or joint venture, and that no Member or Manager be a partner or joint venturer of any other Member or Manager, for any purposes other than applicable tax laws, and these Regulations may not be construed to suggest otherwise

**1 08.** **Required Interest** A Required Interest necessary to approve any action shall be a majority in interest unless otherwise stated

## ARTICLE 2
## MEMBERSHIP: DISPOSITIONS OF INTERESTS

**2.01.** **Members; Sharing Ratios.** The members of the Company ("Members") are the persons or entities ("Persons") executing these Regulations as of the date hereof as members and each Person that is hereafter admitted to the Company as a member in accordance with these Regulations  If a Member shall have made a Disposition of all or any portion of its Membership Interest but shall have retained any rights therein, then solely with respect to the Membership Interest (or portion thereof) so disposed, all references to "Member" that appear in Article 4 and Section 8 02(b) shall be deemed to refer to the assignee of such Membership Interest  The Sharing Ratio (herein so called) of each initial Member is set forth on Exhibit "A"

**2 02.** **Dispositions of Membership Interests.** A Member may not make a sale, assignment, transfer, conveyance, gift, exchange, or other disposition (voluntarily, involuntarily or by operation of law) ("Disposition") of all or any portion of its rights or interest in the Company ("Membership Interest") other than a Disposition resulting from the death of such Member, except with the consent of all Members  Any attempted Disposition of all or any portion of a Membership Interest, other than in strict accordance with this Section 2 02, shall be null and void ab initio  A Person to whom a Membership Interest is Disposed (including as a result of the death of a Member) may be admitted to the Company as a member only with the consent of all Members; and (without limiting the generality of Section 5 02) each Member's consent may be given or withheld in the Member's sole and absolute discretion, with or without cause, and subject to such conditions as it shall deem appropriate ("Sole Discretion")  In connection with any Disposition of a Membership Interest or any portion thereof, and any admission of an assignee as a Member, the Member making such Disposition and the assignee shall furnish the Manager with such documents regarding the Disposition as the Manager may request (in form and substance satisfactory to the Manager), including a copy of the Disposition Instrument, a ratification by the assignee of these Regulations (if the assignee is to be admitted as a Member), a legal opinion that the Disposition complies with applicable federal and state securities laws, and a legal opinion that the Disposition will not result in the Company's termination under Section 708 of the Internal Revenue Code of 1986 (as amended from time to time, the

"Code"). Provided, however, in the event of an allowed Disposition hereunder, HENRY HARDEE shall have the first option to acquire the Membership Interest subject to disposition at its then fair market value, as determined by an appraisal obtained and approved by a Required Interest of existing Members  The second option shall be the right of the other existing Members to purchase pro rata such Interest subject to Disposition, in the manner set forth above, i.e. fair market value and appraisal approved by a Required Interest of Members  If the seller of the disposed Membership Interest disagrees with such appraisal approved by such Required Interest, then the seller may obtain its own appraisal and in the event such appraisal is inconsistent with the Member-approved appraisal, then each appraiser shall designate a third appraiser to determine the fair market value, which appraisal shall be binding upon all parties

   2.03.  **Encumbrances of Membership Interests.**  A Member may not pledge, mortgage, subject to a security interest or lien, or otherwise encumber (voluntarily, involuntarily or by operation of law) all or any portion of its Membership Interest without the consent of all Members

   2.04.  **Creation of Additional Membership Interests.**  In the event the Manager or a Required Interest of Members recommends that additional capital is needed to conduct the affairs of Company, additional Membership Interests may be created and issued to existing Members or to other Persons; and such other Persons may be admitted to the Company as a Required Interest of Members determines and on such terms and conditions, and with such Sharing Ratios and Commitments, as a Required Interest of Members may determine at the time of admission  The Manager may reflect the admission of any new Members or the creation of any new class or group of Members in an amendment to these Regulations that need be executed only by the Manager  Further, it is recognized that the first priority for additional Membership Interests shall be to allow each existing Member to contribute capital contributions as is necessary to sustain such Member's present Sharing Ratio  In the event not all exiting Members desire to contribute capital to sustain their existing Sharing Ratio, then it is recognized that such Member shall have his Sharing Ratio reduced as a result of the issuance of such additional Membership Interests  The second priority shall be to allow existing Members the first opportunity, on a pro rata basis, to share in any issuance of additional Membership Interests.  As a final priority, additional Membership Interests may be issued to third parties who are not presently Members of Company

   2.05.  **Withdrawal.**  A Member does not have the right to withdraw from the Company; provided, however, a Member shall have the power to withdraw at any time in violation of this Section 2 05  If a Member exercises such power in violation of this Section 2.05, (a) such withdrawing member shall be liable to the Company and other Members for all monetary damages suffered by them as a result of such withdrawal; and (b) such withdrawing Member shall not have any rights under Article 6 06 of the Act  In no event shall the Company or any Member have the right, through specific performance or otherwise, to prevent a Member from withdrawing in violation of this Section 2 05

2.06.  **Information.**  In addition to the other rights specifically set forth in these Regulations, each Member and each assignee is entitled to all Information to which that Member or Assignee is entitled to have access pursuant to Article 2.22 of the Act under the circumstances and subject to the conditions therein stated

2.07.  **Liability to Third Parties.**  No Member or Manager shall be liable for the debts, obligations or liabilities of the Company, including under a judgment decree or order of a court

2.08.  **Expulsion.**  A Member may not be expelled from the Company

### ARTICLE 3
### CAPITAL CONTRIBUTIONS

3.01.  **Initial Contributions.**  It is recognized that initial capital contributions were made contemporaneous with the formation of Company

3.02  **Additional Capital Contributions.**  It is recognized that no Member shall be required to contribute additional Capital Contributions  However, it is recognized that in the event additional Capital Contributions are required as set forth in Section 2.04, the effect of a Member not contributing such additional Capital Contributions may result in a dilution of such Member's interest

3.03.  **Return of Contributions.**  A Member is not entitled to the return of any part of its Capital Contribution or to be paid interest in respect of either its capital account or its Capital Contributions  An unrepaid Capital Contribution is not a liability of the Company or of any Member  A Member is not required to contribute or to lend any cash or property to the Company to enable the Company to return any Member's Capital Contributions

3.04.  **Advances by Members.**  If the Company does not have sufficient cash to pay its obligations and in the event the Company is unable to obtain additional Capital Contributions to allow Company to pay its obligations, then any Member(s) that may agree to do so with the consent of the Manager may advance all or part of the needed funds to or on behalf of the Company, at a rate per annum equal to the lesser of (A) the maximum rate permitted by applicable law and (B) 2% plus the interest rate publicly quoted by the Wall Street Journal from time to time as its prime commercial or similar reference interest rate, with adjustments to be made on the same date as any change in that rate  An advance described in this Section 3.05 constitutes a loan from the Member to the Company and is not a Capital Contribution

### ARTICLE 4
### DISTRIBUTIONS AND ALLOCATIONS

Allocations shall be made to the Capital Account of each Member in proportion to his/its Sharing Ratio and distributions shall be made to each Member in proportion to his/its

Capital Account   Provided, however, HENRY HARDEE shall not participate in any distributions until the other initial Members have received distributions equal to 140% of capital contributed by such initial Members

## ARTICLE 5
## MANAGEMENT

5.01   Management by Manager. (a)   The powers of the Company shall be exercised by or under the authority of, and the business and affairs of the Company shall be managed under the direction of, a manager of the Company ("Manager"), (whose number shall be one (1).   No Member in its capacity as a Member has the right, power, or authority to act for or on behalf of the Company, to do any act that would be binding on the Company, or to incur any expenditures on behalf of the Company

(b)   In managing the business and affairs of the Company and exercising its powers, the Manager shall act individually and/or through individual officers to which authorities and duties have been delegated pursuant to Section 5 06   No Manager has the right, power, or authority to act for or on behalf of the Company, to do any act that would be binding on the Company, or to incur any expenditures on behalf of the Company, except in accordance with the immediately preceding sentence. Decisions or actions taken by the Manager in accordance with these Regulations (including this Section 5 01 and Section 5.02) shall constitute decisions or actions by the Company and shall be binding on the Manager, Member, Officer (as defined in Section 5.06), and employee of the Company

5.02   Decisions Requiring Member Consent.   Notwithstanding any power or authority granted to managers under the Act, the Articles or these Regulations (including Section 5.01), (a) the Manager may not make any decision or take any action for which the Members' required consent is expressly required by the Articles or these Regulations, without first obtaining such consent, and (b) the Manager may not make any decision or take any action specified below without first obtaining the required consent of Members:

1       Acquisition or disposal of any asset over $100,000 00;
2       Incurring any indebtedness over $100,000 00; and
3       Calls for subsequent capital contributions

Each Member may, with respect to any vote, consent or approval that is entitled to grant pursuant to this Agreement, grant or withhold such consent or approval in his sole discretion

5.03.   Selection of Manager. The Initial Manager shall be HENRY HARDEE  The term of service for HENRY HARDEE shall be for as long as he is legally competent and able to hold such office   At such time as HENRY HARDEE is unable or unwilling to serve as Manager of the Company or in the event he is removed as Manager, which may be accomplished by a vote of a Required Interest of Members (excluding the voting of HENRY HARDEE), MARK A  SCOTT and DONALD SCOTT ROBERTS shall be designated as

Managers of the Company, and the number of Managers shall increase hereunder to two (2) If either of same are unable or unwilling to serve as a Manager of the Company, the holders of a Required Interest in Company shall elect a successor Manager to serve in his place.

5.04.  **Meetings of Members.**  An annual meeting of the Members for the transaction of such business as may properly come before the meeting shall be held on such date and at such times as the Manager shall specify in the notice of the meeting, which shall be delivered to each Member at least 20 days prior to such meeting  Special meetings of the Members may be called by the Manager or by Members having among them at least ten percent (10%) of the Sharing Ratios of all Members  Any such meeting shall be held on such date and at such time as the Person calling such meeting shall specify in the notice of the meeting, which shall be delivered to each Member at least ten (10) days prior to such meeting  Only business within the purpose or purposes described in the notice (or waiver thereof) for such meeting may be conducted at such meeting  Unless otherwise expressly provided in these Regulations, at any meeting of the Members, Members holding among them at least a majority of all Sharing Ratios (a "Majority Interest"), represented either in person or by proxy, shall constitute a quorum for the transaction of business, and an act of a Majority Interest shall be the act of the Members

5.05.  **Provisions Applicable to All Meetings**  In connection with any meeting of the Manager or Members, the following provisions shall apply:

(a)  Place of Meeting  Any such meeting shall be held at the principal place of business of the Company, unless the notice of such meeting (or resolution of the Manager or committee, as applicable) specifies a different place, which need not be in the State of Texas

(b)  Waiver of Notice Through Attendance  Attendance of a Person at such meeting shall constitute a waiver of notice of such meeting, except where such Person attends the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

(c)  Proxies  A Person may vote at such meeting by a written proxy executed by that Person and delivered to another Manager, Member, or member of the committee, as applicable  A proxy shall be revocable unless it is stated to be irrevocable

(d)  Action by Written Consent  Any action required or permitted to be taken at such meeting may be taken without a meeting, without prior notice, and without a vote if a consent or consents in writing, setting forth the action so taken, is signed by the Manager, Members, or members of the committee, as applicable, having not fewer than the minimum number of Sharing Ratios or votes that would be necessary to take the action at a meeting at which all Members, the Manager, or members of the committee, as applicable, entitled to vote on the action were present and voted

(e) **Meetings by Telephone** The Manager, Members, or members of the committee, as applicable, may participate in and hold such meeting by means of conference telephone, videoconference, or similar communications equipment by means of which all Persons participating in the meeting can hear each other

**5.06. Officers.** The Manager shall elect at least annually officers of the Company to serve as President, Vice President and Secretary/Treasurer Unless the Manager decides otherwise, the assignment of such title shall constitute the delegation to such officer of the authority and duties that are normally associated with that office, subject to any specified delegation of authority and duties made by the Manager Any number of titles may be held by the same Manager Any officer may be removed as such, either with or without cause, by the Manager

**5.07. Limitations on Liability of Manager.** The liability of the Manager to the Company and the Members shall be limited to the extent, if any, set forth in the Articles

**5.08. Conflicts of Interest** Subject to the other express provisions of these Regulations, each Member, Manager, Officer, or affiliate thereof may engage in and possess interests in other business ventures of any and every type and description, independently or with others, including ones in competition with the Company, with no obligation to offer to the Company or any other Member, Manager, or Officer the right to participate therein The Company may transact business with any Member, Manager, Officer, or Affiliate thereof, provided the terms of those transactions are no less favorable than those the Company could obtain from unrelated third parties

**5.09. Indemnification; Reimbursement of Expenses; Insurance.** To the fullest extent permitted by the Act: (a) the Company shall indemnify each Manager who was, is, or is threatened to be made a party to any threatened, pending, or completed action, suit, or proceeding ("Proceeding"), any appeal therein, or any inquiry or investigation preliminary thereto, by reason of the fact that he or she is or was a Manager; (b) the Company shall pay or reimburse a Manager for expenses incurred by him or her (i) in advance of the final disposition of a Proceeding to which such Manager was, is, or is threatened to be made a party, and (ii) in connection with his or her appearance as a witness or other participation in any Proceeding. The Company shall indemnify and advance expenses to an Officer of the Company to the extent required to do so by the Act or other applicable law The Company, by adoption of a resolution of the Manager, may indemnify and advance expenses to an Officer, employee, or agent of the Company to the same extent and subject to the same conditions under which it may indemnify and advance expenses to the Manager under the preceding sentence The provisions of this Section 5 09 shall not be exclusive of any other right under any law, provision of the Articles or these Regulations, agreement, or otherwise The Company may purchase and maintain insurance to protect itself and any Manager, Officer, employee, or agent of the Company, whether or not the Company would have the power to indemnify such Person under this Section 5 09. Notwithstanding any other provision of these Regulations or the Company's Articles of Organization to the contrary, no Member, Manager, officer, employee or agent of the

Company will be entitled to be indemnified against any act or failure to act as to which it is found by a court of competent jurisdiction involving the gross negligence or intentional misconduct of such Member, Manager, officer, employee or agent of the Company

## ARTICLE 6
## TAXES

6.01. Tax Returns. The Company shall prepare and timely file all federal, state, and local tax returns required to be filed by the Company Each Member shall furnish to the Company all pertinent information in its possession relating to the Company's operations that is necessary to enable the Company's tax returns to be timely prepared and filed. The Company shall deliver a copy of each such return to the Members on or before ten (10) days prior to the due date of any such return, together with such additional information as may be required by the Members in order for the Members to file their individual returns reflecting the Company's operations The Company shall bear the costs of the preparation and filing of its returns

6.02. Tax Elections. The Company shall make the following elections on the appropriate tax returns:

(a) to adopt the calendar year as the Company's fiscal year;

(b) to adopt the cash method of accounting and to keep the Company's books and records on the income-tax method;

(c) If a distribution of the Company's property as described in Code Section 734 occurs or upon a transfer of Membership Interests as described in Code Section 743, on request by notice from any Member, to elect, pursuant to Code Section 754, to adjust the basis of Company's properties;

(d) to elect to amortize the organizational expenses of the Company ratably over a period of sixty (60) months as permitted by Code Section 709(b); and

(e) any other election the Manager may deem appropriate and in the best interests of the Members

Neither the Company nor any Manager or Member may make an election for the Company to be excluded from the application of the provisions of subchapter K of chapter 1 of subtitle A of the Code or any similar provisions of applicable state law and no provision of these Regulations (including Section 1 07) shall be construed to sanction or approve such an election

6.03. Tax Matters Member HENRY HARDEE shall be designated as the "tax matters member" of the Company pursuant to Code Section 6231(a)(7) (the "Tax Matters Member") The Tax Matters Member shall take such action as may be necessary to cause

to the extent possible each other Member to become a "notice partner" within the meaning of Code Section 6223  The Tax Matters Member shall inform each other Member of all significant matters that may come to its attention in its capacity as Tax Matters Member by giving notice thereof on or before the fifth business day after becoming aware thereof and, within that time, shall forward to each other Member copies of all significant written communications it may receive in that capacity. The Tax Matters Member shall take no action as may be required by applicable law  Any cost or expense incurred by the Tax Matters Member in connection with its duties, including the preparation for or pursuance of administrative or judicial proceedings, shall be paid by the Company

## ARTICLE 7
## BOOKS, RECORDS, AND BANK ACCOUNTS

7.01.  **Maintenance of Books.**  The Manager shall keep or cause to be kept at the principal office of the Company complete and accurate books and records of the Company, supporting documentation of the transactions with respect to the conduct of the Company's business, and minutes of the proceedings of the Manager, Members, and each committee of the Manager  The books and records shall be maintained with respect to accounting matters in accordance with sound accounting practices, and all books and records and shall be available at the Company's principal office for examination by any Member or the Member's duly authorized representative at any and all reasonable times during normal business hours

7.02.  **Reports.**  Within seventy-five days after the end of each taxable year, the Manager shall cause to be sent to each Member at the end of the taxable year a complete accounting of the financial affairs of the Company for the taxable year then ended

7.03.  **Accounts.**  The Manager shall establish one or more separate bank and investment accounts and arrangements for the Company, which shall be maintained in the Company's name with financial institutions and firms that the Manager, with the consent of a Majority Interest, determine  The Manager may not mingle the Company's funds with the funds of the Manager or member

## ARTICLE 8
## DISSOLUTION, WINDING UP, AND TERMINATION

8.01.  **Dissolution.**  (a) Subject to Section 8.01(b), the Company shall dissolve and its affairs shall be wound up on the first to occur of the following events:

(i)      the expiration of the period fixed for the duration of the Company in the Articles;

(ii)     the unanimous consent of the Members;

(iii)  the death, expulsion, withdrawal, dissolution, or Bankruptcy of any Manager that is a Member, or the occurrence of any other event that terminates the continued membership in the Company of any Manager that is a Member;

(iv)  entry of a decree of judicial dissolution of the Company under Article 6.02 of the Act

(b)  If an event described in subparagraphs (i) or (iii) shall occur and there shall be at least two other Members remaining, the Company shall not be dissolved, and the business of the Company shall be continued, if remaining Members holding among them both (i) a majority of the profits interests in the Company (as defined in Rev. Proc. 94-95, 1994-26 I.R.B. 129) held by the remaining members and (ii) a majority of the capital interests in the Company (as defined in such Rev. Proc. 94-95) held by the remaining Members, so agree within 90 days of the occurrence of such event. If such election is made following the occurrence of an event described in subparagraph (i) or (v) of Section 8.01(a), the Manager shall promptly amend the Articles in the manner described in Article 6.01(B) of the Act

(c)  As used herein, the term "Bankrupt" shall mean, with respect to any Person, that (i) such Person (A) makes a general assignment for the benefit of creditors; (B) files a voluntary bankruptcy petition; (C) becomes the subject of an order for relief or is declared insolvent in any federal or state bankruptcy or insolvency proceedings; (d) files a petition or answer seeking for such Person a reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any applicable law; (E) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against such Person in a proceeding of the type described in subclauses (A) through (D) of this clause (i); or (F) seeks, consents to, or acquiesces in the appointment of a trustee, receiver, or liquidator of such Person's or of all or any substantial part of such Person's properties; or (ii) against such Person, a proceeding seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any applicable law has been commenced and 120 days have expired without dismissal thereof or with respect to which, without such Person's consent or acquiescence, a trustee, receiver, or liquidator of such Person or of all or any substantial part of such Person's properties has been appointed and 90 days have expired without the appointment having been vacated or stayed

8.02.  Winding Up and Termination.  (a) On the occurrence of an event described in Section 8.01(a), unless an election is made to continue the business of the Company pursuant to Section 8.01(b), the Manager shall act as liquidator or may appoint one or more Members as liquidator; provided, however, that (i) no Member with respect to whom an event described in subparagraph (iii) of Section 8.01(a) has occurred shall serve as (or act with any other Person as) a liquidator, either in its capacity as a Member or (if applicable) a Manager, and (ii) if application of the foregoing clause (i) results in there being no liquidator, then the liquidator shall be selected by a Majority Interest of Members (calculated without reference to any Member referred to in such clause (i)). The liquidator



shall proceed diligently to wind up the affairs of the Company as provided in the Act. Until final distribution, the liquidator shall continue to operate the Company properties with all of the power and authority of the Manager. The costs of winding up shall be borne as a Company expense.

(b)    Any assets of the Company remaining at the conclusion of the winding up process shall be distributed among the Members in accordance with their Sharing Ratios. All distributions in kind to the Members shall be made subject to the liability of each distributee for costs, expenses, and liabilities theretofore incurred for which the Company has committed prior to the date of termination. The distribution of cash and/or property to a Member in accordance with the provisions of this Section 8.02(b) constitutes a complete return to the Member of its Capital Contributions and a complete distribution to the Member of its Membership Interest and all the Company's property and constitutes a compromise to which all Members have consented.

(c)    On completion of such final distribution, the Manager shall file Articles of Dissolution with the Secretary of State of Texas, cancel any other filings made pursuant to Section 1.05, and take such other actions as may be necessary to terminate the existence of the Company.

8.03.   No Restoration of Deficit Capital Balances.   No Member shall be required to pay to the Company, to any other Member or to any third party any deficit balance that may exist from time to time in any capital or similar account maintained for such Member for any purpose.

**ARTICLE 9**
**GENERAL PROVISIONS**

9.01.   Offset   Whenever the Company is to pay any sum to any Member, any amounts that Member owes the Company may be deducted from that sum before payment.

9.02.   Notices.   All notices, requests, or consents under these Regulations shall be (a) in writing, (b) delivered to the recipient in person, by courier or mail or by facsimile, telegram, telex, cablegram, or similar transmission, (c) if to a Member, delivered to such Member at the applicable address on Exhibit "A" or such other address as that Member may specify by notice to the other Members, (d) if to the Manager or the company, delivered to the Manager and (e) effective only upon actual receipt by such Person. Whenever any notice is required to be given by applicable law, the Articles, or these Regulations, a written waiver thereof, signed by the Person entitled to notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice.

9.03   Entire Agreement; Supersedure.   These Regulations constitute the entire agreement of the Members relating to the Company and supersedes all prior contracts or agreements with respect to the company, whether oral or written.

9.04.   **Effect of Waiver or Consent**  A waiver or consent, express or implied, to or of any breach or default by any Person in the performance by that Person of its obligations with respect to the Company is not a consent or waiver to or of any other breach or default in the performance by that Person of the same or any other obligations of that Person with respect to the Company

9.05   **Amendments of Articles and Regulations**   The Articles and these Regulations may be amended or restated only with the approval of the Manager and all of the Members

9.06.   **Binding Effect**  Subject to the restrictions on Dispositions set forth in these Regulations, these Regulations are binding on and inure to the benefit of the Members and their respective heirs, legal representatives, successors, and assigns

9.07.   **Governing Law; Severability.**  THESE REGULATIONS ARE GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS (EXCLUDING ITS CONFLICT OF-LAW RULES)   If any provision of these Regulations or the application thereof to any Person or circumstances is held invalid or unenforceable to any extent, the remainder of these Regulations and the application of that provision to other Persons or circumstances is not affected thereby and that provision shall be enforced to the greatest extent permitted by applicable law

9.08.   **Construction.**  Unless the context requires otherwise; (a) the gender (or lack of gender) of all words used in these Regulations includes the masculine, feminine, and neuter; (b) the word "including" means "including, without limitation"; (c) references to Articles and Sections refer to Articles and Sections of these Regulations; and (d) references to Exhibits are to the Exhibits attached to these Regulations, each of which is made a part hereof for all purposes

9.09.   **Further Assurances.**   In connection with these Regulations and the transactions contemplated hereby, each Member shall execute and deliver any additional documents and instruments and perform any additional acts that may be necessary or appropriate to effectuate and perform the provisions of these Regulations and those transactions

9.10.   **Counterparts**   These Regulations may be executed in any number of counterparts, all of which shall constitute the same instrument

IN WITNESS WHEREOF, following adoption of these Regulations by the Manager, the initial Manager has executed these Regulations as of the date first set forth above

HENRY HARDEE

## EXHIBIT "A"
## INITIAL MEMBERS

| MEMBER | CAPITAL CONTRIBUTION | UNITS OWNED | SHARING RATIO |
|---|---|---|---|
| JAMES HENRY HARDEE | Labor contributed | 10 | 25 0% |
| DONALD SCOTT ROBERTS | $77,500 00 | 5 | 12 5% |
| CHRISTOPHER T ALFORD | $46,500 00 | 3 | 7 5% |
| MICHAEL SCOTT & JENNIFER DEASON | $15,500 00 | 1 | 2 5% |
| SUSAN MCDANEL DEASON | $31,000 00 | 2 | 5 0% |
| DAN TURNER TOMLIN | $93,000.00 | 6 | 15 0% |
| BRADLEY SHAWN ROBERTS | $62,000 00 | 4 | 10 0% |
| MARK A SCOTT | $77,500.00 | 5 | 12 5% |
| DENNIS D WOOD | $62,000 00 | 4 | 10.0% |
| TOTAL: | | | 100.0% |

IT IS UNDERSTOOD AND RECOGNIZED THAT SUCH CAPITAL CONTRIBUTIONS AS
SET FORTH ABOVE SHALL BE CONTRIBUTED UPON WRITTEN REQUEST AND
NOTIFICATION BY MANAGER, HENRY HARDEE.

## FIRST AMENDMENT TO REGULATIONS OF
## ETRG INVESTMENTS, LLC

The undersigned, constituting the Manager and all Members of ETRG INVESTMENTS, LLC, desire to amend Article 2.02 of the Regulations of ETRG INVESTMENTS, LLC, pursuant to Article 9 05 of the Regulations

Article 2 02 is hereby amended to read as follows:

"2.02. **Dispositions of Membership Interests.** A Member may not make a sale, assignment, transfer, conveyance, gift, exchange, or other disposition (voluntarily, involuntarily or by operation of law) ("Disposition") of all or any portion of its rights or interest in the Company ("Membership Interest") other than a Disposition resulting from the death of such Member, except with the consent of all Members Any attempted Disposition of all or any portion of a Membership Interest, other than in strict accordance with this Section 2 02, shall be null and void ab initio A Person to whom a Membership Interest is Disposed (including as a result of the death of a Member) may be admitted to the Company as a member only with the consent of all Members; and (without limiting the generality of Section 6 02) each Member's consent may be given or withheld in the Member's sole and absolute discretion, with or without cause, and subject to such conditions as it shall deem appropriate ("Sole Discretion") In connection with any Disposition of a Membership Interest or any portion thereof, and any admission of an assignee as a Member, the Member making such Disposition and the assignee shall furnish the Manager with such documents regarding the Disposition as the Manager may request (in form and substance satisfactory to the Manager), including a copy of the Disposition instrument, a ratification by the assignee of these Regulations (if the assignee is to be admitted as a Member), a legal opinion that the Disposition complies with applicable federal and state securities laws, and a legal opinion that the Disposition will not result in the Company's termination under Section 708 of the Internal Revenue Code of 1986 (as amended from time to time, the "Code") Provided, however, in the event of an allowed Disposition hereunder, the Members shall have the right to purchase prorata such interest subject to disposition, at its then fair market value, as determined by an appraisal obtained and approved by a Required interest of existing Members If the seller of the disposed Membership interest disagrees with such appraisal approved by such Required interest, then the seller may obtain its own appraisal and in the event such appraisal is inconsistent with the Member-approved appraisal, then each appraiser shall designate a third appraiser to determine the fair market value, which appraisal shall be binding upon all parties "

Other than this amendment, the existing Regulations of ETRG INVESTMENTS, LLC shall remain in full force and effect

**EXECUTED EFFECTIVE December 15, 2006**

JAMES HENRY HARDEE, Manager/Member

DONALD SCOTT ROBERTS, Member

CHRISTOPHER T ALFORD, Member

MICHAEL SCOTT, Member
DEASON

JENNIFER DEASON, Member

SUSAN MCDANIEL DEASON, Member

DAN TURNER TOMLIN, Member

BRADLEY SHAWN ROBERTS, Member

MARK A SCOTT, Member

DENNIS D WOOD, Member

FORMS\AMEND-REG-ETRG INVESTMENTS

**Multiple claims. If a complaint asserts multiple claims which involve different subject matter divisions of the circuit court, the cover sheet for that division which is most definitive of the nature of the case should be selected and completed.**

## COVER SHEET
## STATE OF ARKANSAS
## CIRCUIT COURT: CIVIL

To Save a copy of this form to your computer, please click the disk icon on the toolbar above.

The civil reporting form and the information contained herein shall not be admissible as evidence in any court proceeding or replace or supplement the filing and service of pleadings, orders, or other papers as required by law or Supreme Court Rule. This form is required pursuant to Administrative Order Number 8. Instructions are located on the back of the form.

County: Pulaski
District: _____
Docket Number: CV 2010 7060

Judge: _Chris Piazza_
Division: _____   60
Filing Date: _____

Plaintiff: ETRG Investments, LLC
Defendant: James Henry Hardee

Attorney Providing Information: Ashlea Brown
2228 Cottondale Lane, Suite 200

☒ Plaintiff   ☐ Defendant   ☐ Intervenor
Address

Litigant, if Pro Se: _____
Little Rock, AR 72205

Address
Related Case(s): Judge_____
Case Number(s) _____

**Type of Case:**

**Torts**
- ☐ (NM) Negligence: Motor Vehicle
- ☐ (NO) Negligence: Other
- ☐ (BF) Bad Faith
- ☒ (FR) Fraud
- ☐ (MP) Malpractice
- ☐ (PL) Product Liability
- ☐ (OD) Other _____

**Contracts**
- ☐ (IS) Insurance
- ☐ (DO) Debt: Open Account
- ☐ (PN) Debt: Promissory Note
- ☐ (EM) Employment
- ☐ (OC) Other _____

**Equity**
- ☐ (FC) Foreclosure
- ☐ (QT) Quiet Title
- ☐ (IJ) Injunction
- ☐ (PT) Partition
- ☐ (OT) Other _____

**Miscellaneous**
- ☐ (CD) Condemnation
- ☐ (RE) Replevin
- ☐ (DJ) Declaratory Judgment
- ☐ (UD) Unlawful Detainer
- ☐ (IN) Incorporation
- ☐ (EL) Election
- ☐ (FJ) Foreign Judgment
- ☐ (WT) Writs_____
- ☐ (AA) Administrative Appeal
- ☐ (CF) Property Forfeiture
- ☐ (RD) Remove Disabilities
- ☐ (NC) Name Change
- ☐ (OM) Other _____

**Jury Trial Requested:** ☒ Yes ☐ No

**Manner of Filing:**   ☒ Original ☐ Re-open ☐ Transfer
☐ Return from Federal/Bankruptcy Court

**DISPOSITION INFORMATION**

Disposition Date: _____   ☐ Bench Trial   ☐ Non-Trial   ☐ Jury Trial

**Judgment Type:**
- ☐ (DJ) Default Judgment
- ☐ (SJ) Summary Judgment
- ☐ (CJ) Consent Judgment
- ☐ (TJ) Trial Judgment
- ☐ (OJ) Other Judgment
- ☐ (PG) Petition Granted
- ☐ (PD) Petition Denied
- ☐ (DF) Decree of Foreclosure

**Dismissal Type:**
- ☐ (DW) Dismissed with Prejudice
- ☐ (DN) Dismissed without Prejudice

**Other:**
- ☐ (TR) Transferred to Another Jurisdiction
- ☐ (RB) Removed to Bankruptcy Court
- ☐ (RF) Removed to Federal Court
- ☐ (AR) Arbitration

**Judgment For:**
☐ Plaintiff   ☐ Defendant   ☐ Both
Judgment Amount: $ _____

Clerk's Signature _____
Date _____

AOC 23  10-01
625 Marshall Street
Little Rock, AR 72201

Send 1 paper or electronic copy to AOC upon filing.
Send 1 paper or electronic copy to AOC upon disposition.
Keep original in court file.

**Effective 1-1-2002**

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

9TH DIVISION

DAN TOMLIN                                                    PLAINTIFF

60 CV 2010 7059 FILED 12/10/10 16:25:59

VS.                                                        at O'Brien Pulaski Circuit Clerk
CASE NO. _____                 F6

JAMES HENRY HARDEE                                          DEFENDANT

### COMPLAINT

Comes now, Dan Tomlin ("Mr. Tomlin"), by and through his attorneys, Newland &

Associates, PLLC, and for his Complaint against James Henry Hardee, states as follows:

### I. PARTIES

1. Dan Tomlin is a resident of Georgia and is a member of ETRG Investments, LLC

("ETRG"), which is an LLC authorized to do business in Arkansas and has its principal place of

business in Pulaski County, Arkansas.

2. Upon information and belief, Defendant is a resident of Tyler, Texas. While

acting as manager of ETRG, Defendant had significant contacts with the State of Arkansas,

including but not limited to traveling to Arkansas to manage and operate restaurants owned by

ETRG in Arkansas.

### II. JURISDICTION AND VENUE

3. Jurisdiction is proper pursuant to Ark. Code Ann. § 16-13-201.

4. Venue is proper pursuant to Ark. Code Ann. § 16-60-113 because (1) one or more

of the acts utilized to induce, perpetuate, or conceal the fraud described herein was performed in

Pulaski County, Arkansas, and (2) one or more of the fraudulent acts described herein or a part

Page 1 of 8

**EXHIBIT**

C



60CV-10-7059      601-60100012190-034
DAN TOMLIN V JAMES HENRY HAR 9 Pages
PULASKI CO        12/10/2010 04:24 PM
CIRCUIT COURT                    CC05$

of the scheme to defraud described herein originated or was communicated from or into Pulaski County by telephone, mail, or other means orally or in writing.

### III. FACTS

5. In 2005, Defendant asked Dan Tomlin to invest in ETRG for the purpose of operating Zaxby's franchises in Pulaski County, Arkansas.

6. Defendant represented to Mr. Tomlin that he was a very experienced restaurant manager and that he would manage the operation of the Zaxby's restaurants in Pulaski County, Arkansas with the highest degree of care.

7. Defendant represented that Mr. Tomlin would receive a high return on his investment and that Mr. Tomlin would receive his principal investment back within a short period of time as a result of ETRG's operation of Zaxby's franchises in Pulaski County, Arkansas.

8. In reliance on Defendant's representations, Mr. Tomlin invested a significant amount of money into ETRG and became one of ETRG's initial members.

9. Defendant also advised Mr. Tomlin that Defendant had obtained an SBA loan to start up the Zaxby's restaurants in Pulaski County, Arkansas, but that it was necessary for ETRG to get a "bridge loan" for operating expenses until the SBA loan was finalized.

10. Defendant asked Mr. Tomlin to pledge Mr. Tomlin's own real property as collateral for the "bridge loan" until the SBA loan could be finalized.

11. Mr. Hardee represented to Mr. Tomlin that Mr. Tomlin's real property would only be pledged as collateral temporarily.

12. On or about January 1, 2006, ETRG adopted Regulations to govern the operation of ETRG. A true and correct copy of the Regulations is attached hereto as Exhibit "A."

13. Pursuant to the Regulations, ETRG was to be managed under the direction of a manager. *See* Exhibit A, Article 5.01(a).

14. The Regulations named Defendant as the manager. *See* Exhibit A, Article 5.03.

15. Article 4 of the Regulations provided that Defendant "shall not participate in any distributions until the other initial Members have received distributions equal to 140% of capital contributed by such initial Members." *See* Exhibit A, Article 4.

16. As manager, Mr. Hardee traveled to Arkansas to operate ETRG's Zaxby's restaurants in Pulaski County, Arkansas.

17. Mr. Hardee leased property in Pulaski Arkansas in order for ETRG to operate its Zaxby's restaurants.

18. From 2006 to 2008, Defendant represented to Mr. Tomlin that ETRG's operation of the Zaxby's franchises in Pulaski County, Arkansas were running smoothly and that all appropriate Arkansas state and local taxes were being paid.

19. In late 2008, Mr. Tomlin discovered that Defendant had misappropriated ETRG's funds, including Mr. Tomlin's investment, for his own personal use, had failed to keep accurate accounting records, had failed to pay Arkansas payroll taxes, had failed to pay Arkansas sales taxes, and had failed to pay ETRG's debts to vendors located in Arkansas and secured by ETRG's personal property in Pulaski County, Arkansas.

20. Defendant submitted falsified financial statements to Mr. Tomlin and misrepresented ETRG's financial condition in an attempt to conceal his conversion and failure to pay appropriate debts in Arkansas.

21. Mr. Tomlin also discovered that Defendant had used funds from ETRG's Arkansas bank accounts to pay for personal expenses.

22. Defendant withdrew funds from ATMs in Arkansas to pay for personal expenses.

23. Upon information and belief, Defendant never intended for ETRG to make a profit, but only intended to use ETRG for his own personal gain to the detriment of ETRG's investors such as Mr. Tomlin.

24. Mr. Tomlin also discovered that Defendant had never obtained or even attempted to obtain the SBA loan as he represented.

25. Mr. Tomlin also later discovered that Defendant had been taking distributions from ETRG in violation of Article 4 of the Regulations.

26. Mr. Tomlin also discovered that Defendant had taken out an unauthorized loan and used the furniture, fixtures, and equipment located at ETRG's Zaxby's restaurant in Maumelle, Arkansas, as collateral for said loan. Upon information and belief, Defendant obtained this loan in an attempt to conceal his conversion of ETRG's assets.

27. As a result of Defendant's misappropriations, ETRG is currently in financial distress.

28. Mr. Tomlin has never received the return on his investment as promised by Defendant and, in fact, has had to invest even more money into ETRG to keep it operating.

29. Mr. Tomlin's real property is still pledged as collateral for ETRG's operating loan.

## IV.   COUNT I – FRAUDULENT INDUCEMENT

30. Mr. Tomlin incorporates and re-alleges the allegations contained in Paragraphs 1 through 29 of this Complaint as if set forth word for word herein.

31. Defendant materially misrepresented to Mr. Tomlin that his investment in ETRG would have a high rate of return due to the operation of Zaxby's franchises in Pulaski County, Arkansas.

32. Defendant also materially misrepresented that he had obtained an SBA loan for ETRG that would allow Mr. Tomlin's real property to be released as collateral from the alleged "bridge loan."

33. Defendant also materially misrepresented that he would appropriately operate and manage the operations of ETRG's Zaxby's restaurants in Pulaski County, Arkansas.

34. Defendant made the above-mentioned material misrepresentations to induce Mr. Tomlin to invest in ETRG.

35. Defendant's material misrepresentations regarding the return that Mr. Tomlin would receive on his investment in ETRG were untrue.

36. Mr. Tomlin justifiably relied on Defendant's material misrepresentations regarding the operation of Zaxby's restaurants in Pulaski County, Arkansas.

37. As a result of Mr. Tomlin's reliance on Defendant's misrepresentations, he has incurred damages in an amount to be determined at trial in excess of that required for federal diversity jurisdiction.

## IV.    COUNT II – FRAUD

38. Mr. Tomlin incorporates and re-alleges the allegations contained in Paragraphs 1 through 37 of this Complaint as if set forth word for word herein.

39. Defendant represented that Mr. Tomlin's and ETRG's funds were being used to pay Arkansas taxes and vendors in Arkansas; however, he was using these funds to pay for his purpose.

40. Defendant also purposefully took out an unauthorized loan in ETRG's name, secured by ETRG's personal property in Maumelle, Arkansas, to conceal his conversion.

41. Defendant purposefully submitted falsified financial statements to Mr. Tomlin and misrepresented the financial condition of ETRG to conceal his conversion.

42. Defendant knew that the misrepresentations made in ETRG's financial statements were false.

43. Defendant made these representations with the intent to conceal his conversion and thereby defraud Mr. Tomlin.

44. In reliance on Defendant's misrepresentations and intentional misconduct, Mr. Tomlin justifiably believed that his investment in ETRG was sound and Mr. Tomlin refrained from interfering with Defendant's management of ETRG.

45. As a result of Defendant's material misrepresentations, Mr. Tomlin has been damaged in an amount to be determined at trial that is in excess of that required for federal diversity jurisdiction.

46. As a result of Defendant's material misrepresentations, ETRG is entitled to punitive damages in an amount to be determined at trial.

## V.    COUNT III – BREACH OF FIDUCIARY DUTY

47. Mr. Tomlin incorporates and re-alleges the allegations contained in Paragraphs 1 through 46 of this Complaint as if set forth word for word herein.

48. As a result of his status as manager of ETRG, Defendant owed a fiduciary duty to Mr. Tomlin.

49. Defendant's willful and conscious decision to convert the assets of ETRG to his own personal use, to obtain an unauthorized loan to conceal his conversion, and to create falsified financial statements to conceal his covnersion constitutes a breach of his fiduciary duties.

50. Defendant's willful and conscious decision to make improper distributions to himself in violation of the Regulations constitutes a breach of his fiduciary duties.

51. As a direct and proximate result of Defendant's breach, Mr. Tomlin has been damaged in an amount to be determined at trial that is in excess of that required for federal diversity jurisdiction.

## V.    COUNT III – PUNITIVE DAMAGES

52. Mr. Tomlin incorporates and re-alleges the allegations contained in Paragraphs 1 through 51 as if set forth word for word herein.

53. Defendant knew that he was acting against the interest of Mr. Tomlin, he knew that his actions would cause damage to Mr. Tomlin, yet he continued to act in reckless disregard of his knowledge that his actions were against the best interest of Mr. Tomlin and would damage Mr. Tomlin.

54. Therefore, punitive damages in an amount to be determined by the jury should be imposed upon him to punish him and to deter others similarly situated.

WHEREFORE, Plaintiff, ETRG Investments, LLC, request that it be awarded compensatory damages and consequential damages in an amount to be determined at trial that is in excess of that required for federal diversity jurisdiction, punitive damages sufficient to deter James Henry Hardee from engaging in this type of conduct in the future, and its costs and attorneys' fees and all other just and proper relief to which it may be entitled.

Respectfully Submitted,

Dan Tomlin

By and through:

Newland & Associates, PLLC
2228 Cottondale Lane, Suite 200
Little Rock, AR 72202
(501) 221-9393
(501) 221-7058 (fax)

Ashlea Brown, Ark. Bar No. 2007197
J. Richard Newland, Ark. Bar # 2000157

**Multiple claims. If a complaint asserts multiple claims which involve different subject matter divisions of the circuit court, the cover sheet for that division which is most definitive of the nature of the case should be selected and completed.**

## COVER SHEET
## STATE OF ARKANSAS
## CIRCUIT COURT: CIVIL


To Save a copy of this form to your computer, please click the disk icon on the toolbar above.

The civil reporting form and the information contained herein shall not be admissible as evidence in any court proceeding or replace or supplement the filing and service of pleadings, orders, or other papers as required by law or Supreme Court Rule. This form is required pursuant to Administrative Order Number 8 and is located on the back of the form.

60CV10 4059

**FILING INFORMATION**

County: Pulaski     District:     Docket Number: CV

9TH DIVISION

Judge: McGowan     Division:     Filing Date: DEC 1 0 2010

Plaintiff: Dan Tomlin     Defendant: James Henry Hardee

Attorney Providing Information: Ashlea Brown     2228 Cottondale Lane, Suite 200
☒ Plaintiff    ☐ Defendant    ☐ Intervenor     Address

Litigant, if Pro Se: _____     Little Rock, AR 72205

    Address
Related Case(s): Judge_____     Case Number(s) _____

**Type of Case:**

*Torts*
- ☐ (NM) Negligence: Motor Vehicle
- ☐ (NO) Negligence: Other
- ☐ (BF) Bad Faith
- ☒ (FR) Fraud
- ☐ (MP) Malpractice
- ☐ (PL) Product Liability
- ☐ (OD) Other _____

*Contracts*
- ☐ (IS) Insurance
- ☐ (DO) Debt: Open Account
- ☐ (PN) Debt: Promissory Note
- ☐ (EM) Employment
- ☐ (OC) Other _____

*Equity*
- ☐ (FC) Foreclosure
- ☐ (QT) Quiet Title
- ☐ (IJ) Injunction
- ☐ (PT) Partition
- ☐ (OT) Other _____

*Miscellaneous*
- ☐ (CD) Condemnation
- ☐ (RE) Replevin
- ☐ (DJ) Declaratory Judgment
- ☐ (UD) Unlawful Detainer
- ☐ (IN) Incorporation
- ☐ (EL) Election
- ☐ (FJ) Foreign Judgment
- ☐ (WT) Writs _____
- ☐ (AA) Administrative Appeal
- ☐ (CF) Property Forfeiture
- ☐ (RD) Remove Disabilities
- ☐ (NC) Name Change
- ☐ (OM) Other _____

**Jury Trial Requested:** ☒ Yes ☐ No     **Manner of Filing:** ☒ Original ☐ Re-open ☐ Transfer
    ☐ Return from Federal/Bankruptcy Court

**DISPOSITION INFORMATION**

Disposition Date: _____    ☐ Bench Trial    ☐ Non-Trial    ☐ Jury Trial

**Judgment Type:**
- ☐ (DJ) Default Judgment
- ☐ (SJ) Summary Judgment
- ☐ (CJ) Consent Judgment
- ☐ (TJ) Trial Judgment
- ☐ (OJ) Other Judgment
- ☐ (PG) Petition Granted
- ☐ (PD) Petition Denied
- ☐ (DF) Decree of Foreclosure

**Dismissal Type:**
- ☐ (DW) Dismissed with Prejudice
- ☐ (DN) Dismissed without Prejudice

**Other:**
- ☐ (TR) Transferred to Another Jurisdiction
- ☐ (RB) Removed to Bankruptcy Court
- ☐ (RF) Removed to Federal Court
- ☐ (AR) Arbitration

**Judgment For:**
☐ Plaintiff    ☐ Defendant    ☐ Both     Judgment Amount: $_____

Clerk's Signature _____     Date _____

AOC 23  10-01
625 Marshall Street
Little Rock, AR 72201

Send 1 paper or electronic copy to AOC upon filing.
Send 1 paper or electronic copy to AOC upon disposition.
Keep original in court file.

**Effective 1-1-2002**