IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **JAMES H. HARDEE** | § | |
| xxx-xx-3905 | § | Case No. 11-60242 |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| ETRG INVESTMENTS, LLC, | § | |
| DAN TOMLIN, and | § | |
| MARK SCOTT | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | Adversary No. 11-6011 |
| | § | |
| JAMES H. HARDEE | § | |
| | § | |
| Defendant | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]**

Upon trial of the complaint in the above-referenced adversary proceeding, the

Court issues the following findings of fact and conclusions of law pursuant to Fed. R.

Civ. P. 52, as incorporated into adversary proceedings in bankruptcy cases by Fed. R.

Bankr. P. 7052.

---

[1] These findings of fact and conclusions of law are not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other applicable evidentiary doctrines.

## AGREED FACTS[1]

1.    Plaintiffs Dan Tomlin and Mark Scott are individuals residing within Georgia.[2]

2.    Plaintiff ETRG Investments, L.L.C. ("ETRG") is a Texas limited liability company formed in May 2005 for the purpose of owning and operating Zaxby's fast-food restaurants in central Arkansas.[3]

3.    Plaintiffs Dan Tomlin and Mark Scott invested in ETRG in exchange for an ownership interest.[4]

4.    Defendant invested no money into ETRG.  Defendant held the title of Managing Member of ETRG from its inception until December 2008.[5]

5.    The salary that ETRG agreed to pay Defendant was $75,400 per year.[6]

6.    In September 2006, Irwin Franchise Capital Corporation provided an SBA loan to ETRG for $350,000.[7]

7.    Plaintiff Mark Scott initially invested $77,500 into ETRG.[8]

8.    Plaintiff Dan Tomlin initially invested $93,000 into ETRG.[9]

9.    Defendant sent a letter to the investors of ETRG on December 31, 2005, which was included in Plaintiffs' bates-stamped discovery documents as

---

[1]  These agreed facts were set forth in the approved Joint Pre-Trial Order entered in this adversary proceeding on November 20, 2012.

[2]  ¶ 1 of the Agreed Issues of Fact.

[3]  ¶ 2 of the Agreed Issues of Fact.

[4]  ¶ 3 of the Agreed Issues of Fact.

[5]  ¶ 4 of the Agreed Issues of Fact.

[6]  ¶ 5 of the Agreed Issues of Fact.

[7]  ¶ 6 of the Agreed Issues of Fact.

[8]  ¶ 7 of the Agreed Issues of Fact.

[9]  ¶ 8 of the Agreed Issues of Fact.

PLT02805-2818.[10]

10. Defendant prepared and sent to each investor monthly financial statements regarding the financial condition of ETRG.[11]

11. Defendant sent falsified financial statements via email to ETRG investors to conceal his taking of ETRG funds in excess of his scheduled compensation amount.[12]

12. During his time as the Managing Member, Defendant used ETRG funds in lieu of his scheduled compensation, but in excess of that scheduled compensation amount, for his personal purposes, including personal mortgage payments, personal vehicle payments, and personal credit card payments.[13]

13. In October 2011, Hardee was charged and subsequently pled guilty to wire fraud pursuant to 18 U.S.C. § 1343 before the United States District Court for the Eastern District of Texas in a case styled United States of America v. James Henry Hardee and pending under case number 6:11-CR-96.[14]

14. The sentencing hearing before the United States District Court for the Eastern District of Texas in United States of America v. James Henry Hardee, case number 6:11-CR-96, was set for December 5, 2012.[15]

15. The following bank accounts were owned by ETRG during the time that Defendant was manager of ETRG:  Regions Bank account numbers ending in 4566, 8138, 8146, 0073; Community Bank account number ending in 6057; Arvest Bank account numbers ending in 8867, 8583, 2781, 2778, 2765.[16]

---

[10] ¶ 9 of the Agreed Issues of Fact.

[11] ¶ 10 of the Agreed Issues of Fact.

[12] ¶ 11 of the Agreed Issues of Fact.

[13] ¶ 12 of the Agreed Issues of Fact.

[14] ¶ 13 of the Agreed Issues of Fact.

[15] ¶ 14 of the Agreed Issues of Fact.

[16] ¶ 15 of the Agreed Issues of Fact.

16. The following bank accounts were owned by Hardee in his personal capacity during the time he was manager of ETRG:  Regions Bank account ending in 3413 and Southside Bank account ending in 2327.[17]

17. During the time that Defendant was manager of ETRG, he resided in Tyler, Texas.[18]

18. During the time that Defendant was manager of ETRG, he was married to Cuba Machelle Hardee.[19]

19. During the time that Defendant was manager of ETRG, Cuba Machelle Hardee owned and operated a business known as "ITZ EN."[20]

20. Defendant has three children: Ella, Preston, and Anna.[21]

21. During the time he was manager of ETRG, Defendant owed a personal debt to National Star Mortgage, LLC.[22]

22. During the time he was manager of ETRG, Defendant or his wife was a member of Hollytree Country Club.[23]

23. During the time he was manager of ETRG, Defendant or his wife had insurance with Kemper Auto Insurance.[24]

24. On December 10, 2010, ETRG filed a lawsuit against Defendant in the Circuit Court of Pulaski County, Arkansas, Case No. CV 2010-7060, which was stayed

---

[17] ¶ 16 of the Agreed Issues of Fact.

[18] ¶ 17 of the Agreed Issues of Fact.

[19] ¶ 18 of the Agreed Issues of Fact.

[20] ¶ 19 of the Agreed Issues of Fact.

[21] ¶ 20 of the Agreed Issues of Fact.

[22] ¶ 21 of the Agreed Issues of Fact.

[23] ¶ 22 of the Agreed Issues of Fact.

[24] ¶ 23 of the Agreed Issues of Fact.

due to Defendant's filing for relief under Chapter 7 of the Bankruptcy Code.[25]

25.    On December 10, 2010, Dan Tomlin filed a lawsuit against Defendant in the Circuit Court of Pulaski County, Arkansas, Case No. CV 2010-7061, which was stayed due to Defendant's filing for relief under Chapter 7 of the Bankruptcy Code.[26]

26.    Defendant filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on March 17, 2011.[27]

27.    Defendant listed ETRG, Mr. Tomlin, Mr. Scott, and other former members of ETRG as creditors on his "Schedule F, Creditors Holding Unsecured Nonpriority Claims."[28]

28.    Defendant admitted the following in his Responses to Plaintiff's First Set of Requests for Admission:

   (a)    That ETRG's company regulations required him to obtain unanimous consent from ETRG's members prior to incurring any indebtedness of $100,000 on behalf of ETRG.  (RFA No. 1)

   (b)    That as manager of ETRG he was responsible for paying, on behalf of ETRG, any payroll taxes owed to the state of Arkansas.

   (c)    That he wrote checks, itemized in the spreadsheets attached to Plaintiffs' First Set of Requests for Admission as Exhibit 1.

   (d)    That during the period of his employment with ETRG, his duties included ETRG's tax responsibilities.

   (e)    That he was involved in ETRG's "tax matters" from 2006 to 2008.

   (f)    That $77,500 was initially invested into ETRG by Mark Scott and that Dan Tomlin initially invested $93,000.

---

[25]  ¶ 24 of the Agreed Issues of Fact.

[26]  ¶ 25 of the Agreed Issues of Fact.

[27]  ¶ 26 of the Agreed Issues of Fact.

[28]  ¶ 27 of the Agreed Issues of Fact.

(g)     That he signed and sent the letter attached to Plaintiffs' First Set of
        Requests for Admission as Exhibit 2 (PLT 02798-02804).

(h)     That the letter attached to Plaintiffs' First Set of Requests for Admission as
        Exhibit 3 (PLT 02805-02818) is a letter that he sent to potential investors of
        ETRG.[29]

## ADDITIONAL FINDINGS OF FACT

29.     The Plaintiffs timely filed a complaint for determination of dischargeability of a
        debt on June 14, 2011, seeking to except their respective claims from the scope of
        any discharge granted to the Defendant.

30.     The Plaintiffs contend that the debts owed to them in their various capacities are
        each non-dischargeable as a debt obtained by actual fraud or by false
        representations pursuant to 11 U.S.C. §523(a)(2)(A), and as a debt arising from a
        defalcation by a fiduciary and/or embezzlement under §523(a)(4).[30]

31.     On June 20, 2012, the Court granted in part and denied in part the Plaintiffs'
        Motion for Partial Summary Judgment.  In that order, and in the reasons expressed
        on the record issued in support of that decision, the Court determined that, on the
        basis of uncontested material facts established by the summary judgment evidence,
        a debt is owed by the Defendant to ETRG Investments, LLC, arising from the
        unauthorized diversion of corporate funds and that such debt is non-dischargeable
        pursuant to 11 U.S.C. §523(a)(4).

32.     The Court, however, denied the summary judgment requested by ETRG as to the
        precise amount of the debt owed by the Defendant to ETRG, with such issue
        reserved for trial.

---

[29]  ¶ 28 of the Agreed Issues of Fact.

[30]  The Plaintiffs' complaint also sought to except the debts allegedly owing to each plaintiff as a
debt arising from a willful and malicious injury pursuant to §523(a)(6).  Those allegations were not
addressed by the Plaintiffs at trial and were legally abandoned by its exclusion from the pre-trial order.
*Kona Technology Corp. v. Southern Pacific Transp. Co.*, 225 F.3d 595, 604 (5th Cir. 2000) ["It is a well-
settled rule that a joint pretrial order signed by both parties supersedes all pleadings and governs the
issues and evidence to be presented at trial."]; *see also Moser v. Mullican (In re Mullican)*, 2008 WL
5191196 at *12 (Bankr. E.D. Tex., Sept. 30, 2008) [noting that "a claim or defense not raised in the pre-
trial order may be deemed waived, even if it appeared in the complaint"], *citing Elvis Presley Enterprises
v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998).  Thus, the issues actually presented to the Court pertained
to §523(a)(2)(A) and (a)(4).

33.     The Plaintiffs acknowledged at the beginning of the evidence that the sum properly due and owing to ETRG by the Defendant from their perspective did not exceed $274,278.08.[31]

34.     The Defendant contended that additional credits should be allowed to lower the debt owed to ETRG because certain withdrawals of funds by the Defendant were utilized for company business.

35.     The Defendant breached his fiduciary duty to ETRG by entering into an unauthorized lending relationship with Irwin Franchise Capital Corporation.

36.     The Defendant embezzled significant sums of money from ETRG in order to pay for his personal expenses, in order to obtain excessive expense reimbursements, and otherwise to receive compensation in excess of the amount that he was duly authorized to receive from ETRG.

37.     From a preponderance of the submitted evidence, including consideration of the "disputed transactions" listed in Defendant's Ex. GG and the Defendant's testimony, and after allowance of credits for salary, documented business expenses, and deposits that the Defendant returned to ETRG's accounts, the Court finds that an additional credit of $20,946.69 should be granted to the Defendant.

38.     Therefore, the Defendant owes a debt to the Plaintiff, ETRG Investments, LLC, arising from his embezzlement in the amount of $253,331.39.


*IRS Tax Liabilities*

39.     As for liabilities arising from the Defendant's failure to tender required tax payments to the United States Internal Revenue Service (IRS) on behalf of ETRG,[32] the Defendant clearly breached the obligations imposed upon him by ¶ 6.03 of the LLC Regulations as to all Plaintiffs.[33]

---

[31] Ex. 1.

[32] This reflects the decision of the Plaintiffs to forego recovery of amounts arising from failure of Defendant to tender LLC funds in satisfaction of Arkansas tax obligations.

[33] The LLC Regulations constituted the "company agreement" for the purposes of TEX. BUS. ORGS. CODE ANN. §101.001(1) and §101.052 (Vernon 2012).

40.    Though the precise determination of the taxes, interest and penalties remains in flux, the latest calculations reveal that a tax debt of $248,027.12 is owed by ETRG to the IRS.[34]

41.    The Defendant breached his fiduciary duty to ETRG to exercise proper care in managing ETRG's affairs in diverting funds and failing to tender all required payments to the appropriate taxing authorities, including the IRS.

42.    As the sole person authorized to transact business and direct the financial activities of ETRG, including the payment of all accrued tax obligations, the Defendant acted as an agent of the Company.

43.    As an agent of ETRG during his tenure as Managing Member, the Defendant had a formal fiduciary relationship with ETRG.

44.    The Defendant's failure in each instance to tender required tax payments to the IRS on behalf of ETRG constituted a willful breach of duty as to ETRG.

45.    The Defendant's failure in each instance to tender required tax payments to the IRS on behalf of ETRG constituted a defalcation while acting in a fiduciary capacity as to ETRG.

46.    Each individual Plaintiff, Dan Tomlin and Mark Scott, has failed to establish by a preponderance of the evidence that the Defendant had a formal fiduciary relationship with him.

47.    The LLC Regulations governing ETRG did not impose, nor did it even address, any fiduciary duty by and among the members of ETRG.[35]

48.    The evidence presented failed to establish that the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA") applied to this particular LLC.

49.    Each individual Plaintiff has failed to establish by a preponderance of the evidence that the Defendant had a informal fiduciary relationship with him.

---

[34] Ex. 48.

[35] Ex. 23.  ¶ 5.07 provided that the liability of the manager was "limited to the extent, if any, set forth in the Articles."  The "Articles" refers to the Limited Liability Company Certificate of Formation. However, the "Articles" were not tendered to the Court for consideration.

50.     Each individual Plaintiff has failed to demonstrate by a preponderance of the evidence that a trust relationship existed between the Defendant and himself prior to the creation of the tax obligations in question.

51.     Each individual Plaintiff has thus failed to demonstrate by a preponderance of the evidence that the Defendant acted in a fiduciary capacity as to him as an LLC member with regard to the non-payment of tax liabilities.

52.     While the circumstances demonstrate a significant financial loss to each individual Plaintiff, thereby placing them in a sympathetic light, such sympathy cannot be permitted to stand in lieu of the required degree of proper proof pertaining to the Defendant's conduct and intentions under these circumstances, particularly in light of the Bankruptcy Code's directive that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor.

*Return of Investment Amounts*

53.     Each individual Plaintiff, Dan Tomlin and Mark Scott, seeks an additional determination that the amounts that each of them initially invested into ETRG Resources, LLC as a result of solicitations tendered to them by the Defendant should be declared non-dischargeable as a debt arising from a false representation, false pretenses or actual fraud.

54.     Notwithstanding the contention of the individual Plaintiffs, the Defendant's plea of guilt to wire fraud under 18 U.S.C. § 1343, and the Factual Resume submitted in conjunction therewith, does not establish that the Defendant induced the original investment by each individual Plaintiff through actual fraud.[36]

55.     The best evidence, including the Factual Resume, indicates that the Defendant devised his embezzlement scheme subsequent to the original investment solicitation.

56.     The Defendant undoubtedly breached the promises that he had earlier made to the individual Plaintiffs, but such conduct is insufficient to render the original investment amounts non-dischargeable.

57.     Each individual Plaintiff, Dan Tomlin and Mark Scott, has failed to demonstrate by a preponderance of the evidence that the amount which each originally invested into ETRG Resources, LLLC was procured by the Defendant under circumstances

---

[36] Ex. 27 at ¶ 6.

constituting actual fraud.

58.    Each individual Plaintiff, Dan Tomlin and Mark Scott, has failed to demonstrate
by a preponderance of the evidence that the Defendant made representations to
him at the time of the investment solicitation that the Defendant knew were false at
the time that such representations were made.

59.    Each individual Plaintiff, Dan Tomlin and Mark Scott, has failed to demonstrate
by a preponderance of the evidence that the Defendant made false representations
to him at the time of the investment solicitation with the intention and purpose of
deceiving the Plaintiff.

60.    Each individual Plaintiff, Dan Tomlin and Mark Scott, has failed to demonstrate
by a preponderance of the evidence that he justifiably relied upon any false
representations by the Defendant since no such false representations were made to
each such Plaintiff at the time of the investment.

61.    To the extent any of these findings of fact constitute conclusions of law, the Court
expressly adopts them as such.

## CONCLUSIONS OF LAW

1.    The Court has jurisdiction to consider the adversary complaint in this proceeding
pursuant to 28 U.S.C. §§1334 and §157.

2.    This Court has authority to enter a final judgment in this adversary proceeding
since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C.
§157(b)(2)(I) and (O) and meets all constitutional standards for the proper exercise
of full judicial power by this Court.

3.    In an action to determine the dischargeability of a debt, the creditor has the burden
of proof under a preponderance of the evidence standard.  *Grogan v. Garner*, 498
U.S. 279, 286 (1991).

4.    "Intertwined with this burden is the basic principle of bankruptcy that exceptions
to discharge must be strictly construed against a creditor and liberally construed in
favor of a debtor so that the debtor may be afforded a fresh start."  *FNFS, Ltd. v.
Harwood (In re Harwood)*, 637 F.3d 615, 619 (5th Cir. 2011) (citing *Hudson v.
Raggio & Raggio, Inc. (In re Hudson)),* 107 F.3d 355, 356 (5th Cir. 1997).

*Failure to Assert Theory of Liability*

5.      The Defendant contends as an initial matter that judgment must be rendered in his favor (or that the complaint must be dismissed) because the Plaintiffs have pled only non-dischargeability grounds and have failed to plead the existence of a cause of action or a theory of liability necessary to establish a "debt" that could thereafter be rendered non-dischargeable.

6.      Such a position elevates form over substance and ignores the liberal pleading rules recognized under federal practice.

7.      In federal practice, "a pleading ... need not specify in exact detail every possible theory of recovery – it must only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Thrift v. Estate of Hubbard*, 44 F.3d 348, 356 (5th Cir.1995) (*quoting Conley v. Gibson*, 355 U.S. 41, 47(1957)) (internal quotations omitted).

8.      Thus, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Cooper Indus., LLC v. American Intern. Specialty Lines Ins. Co.,* 273 Fed. Appx. 297, 307 (5th Cir. 2008) (*citing St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 434 (5th Cir.2000)).

9.      Here, the Complaint clearly asserts, and the Factual Resume from the Defendant's criminal proceeding clearly confirms, the existence of a debt even if there is no designated count that specifies a particular state law cause of action for its recovery.  The Complaint gives the Defendant fair notice of the Plaintiffs' claims and sets forth facts upon which relief can be granted.

10.      Accordingly, the Complaint is sufficient "even if it fails to categorize correctly the legal theory giving rise to the claim." *Cooper Indus.,* 273 Fed. Appx. at 307, (*quoting Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 604 (5th Cir.1981)). The Defendant's contentions based upon that rationale are overruled.

11.      Defendant's plea of guilt to wire fraud under 18 U.S.C. § 1343 does not establish a minimum amount of damages suffered by ETRG.

*Non-dischargeability under § 523(a)(4)*:  *Debt Arising From Fraud or Defalcation
in a Fiduciary Capacity and Embezzlement.*

12.     11 U.S.C. §523(a)(4) provides that "A discharge under 11 U.S.C.§ 727 does not
discharge an individual from a debt for fraud or defalcation while acting in a
fiduciary capacity, embezzlement or larceny."

13.     The Fifth Circuit has noted "that this discharge exception was intended to reach
those debts incurred through abuses of fiduciary positions and through active
misconduct whereby a debtor has deprived others of their property by criminal
acts; both classes of conduct involve debts arising from the debtor's acquisition or
use of property that is not the debtor's."  *Miller v. J.D. Abrams Inc. (Matter of
Miller),* 156 F.3d 598, 602 (5th Cir.1998), *cert. denied*, 526 U.S. 1016 (1999)
(internal quotations omitted).

14.     Whether the actions of an individual were taken in a fiduciary capacity for the
purposes of §523(a)(4) is determined by federal law.  *FNFS, Ltd. v. Harwood (In
re Harwood)*, 637 F.3d 615, 620 (5th Cir. 2011).

15.     However, "state law is important in determining whether or not a trust obligation
exists."  *Gupta v. Eastern Idaho Tumor Institute, Inc. (In re Gupta)*, 394 F.3d 347,
350 (5th Cir. 2004).

16.     The Fifth Circuit has discussed the concept of a fiduciary under §523(a)(4) in the
following terms:

> [T]he concept of fiduciary under §523(a)(4) is narrower than
> it is under general common law.  Under §523(a)(4),
> "fiduciary" is limited to instances involving express or
> technical trusts.  The purported trustee's duties must,
> therefore, arise independent of any contractual obligation.
> The trustee's obligations, moreover, must have been imposed
> prior to, rather than by virtue of, any claimed
> misappropriation or wrong.  Constructive trusts or trusts *ex
> malificio* thus also fall short of the requirements of
> §523(a)(4).
>
> . . . Statutory trusts, by contrast, can satisfy the dictates of
> §523(a)(4).  It is not enough, however, that a statute purports
> to create a trust:  A state cannot magically transform ordinary

agents, contractors, or sellers into fiduciaries by the simple
incantation of the terms "trust" or "fiduciary."  Rather, to
meet the requirements of §523(a)(4), a statutory trust must (1)
include a definable res and (2) impose "trust-like" duties.

*Texas Lottery Comm'n v. Tran (In re Tran),* 151 F.3d 339, 342-43 (5th Cir. 1998).

17.     However, the trust relationship must exist prior to the creation of, and without
        reference to, the indebtedness in question.  *Angelle v. Reed (In re Angelle)*, 610
        F.2d 1335, 1338 (5th Cir. 1980).

18.     The Fifth Circuit has recognized that the "technical" or "express" trust requirement
        is not limited to trusts that arise by virtue of a formal trust agreement, but includes
        relationships in which trust-type obligations are imposed pursuant to statute or
        common law.  *FNFS, Ltd. v. Harwood (In re Harwood)*, 404 B.R. 366, 393 (Bankr.
        E.D. Tex. 2009) (citing *LSP Inv. Partnership v. Bennett (In re Bennett)*, 898 F.2d
        779, 784-85 (5th Cir.), *cert. denied*, 510 U.S. 1011, 114 S.Ct. 601, 126 L.Ed.2d
        566 (1993)).

19.     Federal courts in this context have "not hesitated to conclude that debts arising
        from misappropriation by persons serving in a traditional, pre-existing fiduciary
        capacity, as understood by state law principles, are non-dischargeable." *Gupta*, 394
        F.3d at 350.

20.     Texas permits the formation of a limited liability company.  TEX. BUS. ORGS.
        CODE ANN. §101.001, et.seq. (Vernon 2012).

21.     Generically, a limited liability company works like an incorporated partnership.
        The company provides protection from personal liability for business debts as in a
        corporation, while avoiding a second level of federal taxation on the company's
        earnings as enjoyed in a partnership.  *Shook v. Walden,* 368 S.W.3d 604, 613 (Tex.
        App.– Austin 2012, pet. denied).

22.     It also provides a wide flexibility in management structure, allowing the
        participants to craft much of the management duties and obligations for
        themselves.  It allows direct involvement and control by the members but also
        allows a corporate representative form of governance if the members choose to
        have the LLC governed by managers.  NICHOLAS KARAMBELAS, LIMITED
        LIABILITY COMPANIES:  LAW, PRACTICE AND FORMS §6.2 (2012)

23.     Accordingly, as was true with its predecessor, the Texas Limited Liability
        Company Act, Chapter 101 of the Texas Business Organizations Code does not
        directly address the duties owed by LLC managers and members. As revised, it
        provides:

        > The company agreement of a limited liability company may
        > expand or restrict any duties, including fiduciary duties, and
        > related liabilities that a member, manager, officer, or other
        > person has to the company or to a member or manager of the
        > company.

        TEX. BUS. ORGS. CODE ANN. §101.401 (Vernon 2012).

24.     Thus, though the Texas statute governing limited liability companies implies that
        certain duties may be owed, it does not define any such duties, but rather allows
        the contracting parties to specify the breadth of those duties in the company
        agreement.

25.     There are two general categories of fiduciary relationships recognized under Texas
        law.

26.     One category is a formal fiduciary relationship that arises as a matter of law, and
        includes relationships between attorney and client, principal and agent, partners,
        and joint venturers. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199
        (Tex. 2002).

27.     The relationship between agent and principal is a fiduciary relationship. *SJW
        Property Commerce, Inc. v. SW Pinnacle Properties, Inc.*, 328 S.W.3d 121, 155
        (Tex. App.– Corpus Christi 2010, pet. denied).

28.     "An agent is one who is authorized by a person or entity to transact business or
        manage some affair for the person or entity." *Id. (citing Welch v. Coca–Cola
        Enters., Inc.*, 36 S.W.3d 532, 539 (Tex. App.– Tyler 2000, pet. withdrawn)).

29.     When acting as an agent of ETRG, a manager or managing member owes a duty of
        care pursuant to basic agency principles. RESTATEMENT (THIRD) OF AGENCY
        § 8.08 (2006).

30.     "The critical element of an agency relationship is the right to control, and the
        principal must have control of both the means and details of the process by which
        the agent is to accomplish his task in order for an agency relationship to exist."

*McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 829 (Tex. App. – Dallas 2010, no pet.).

31.   The existence of an agency relationship may be established by circumstantial evidence based upon proof of all the facts and circumstances that shows the relationship of the parties and throws light upon the character of such relations. *SJW Property Commerce,* 328 S.W.3d at 155; *Schultz v. Rural/Metro Corp. of New Mexico-Texas*, 956 S.W.2d 757, 760 (Tex. App. – Houston [14th Dist.] 1997, no pet.).

32.   Further, Texas law recognizes that a fiduciary relationship exists between corporate officers or directors to the corporations they serve.  *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 576 (Tex. 1963); see also *Lifshutz v. Lifshutz*, 199 S.W.3d 9, 18–19 (Tex. App.– San Antonio 2006, pet. denied) ["Corporate officers owe fiduciary duties to the corporations they serve."].

33.   As is widely recognized in the corporate context, one of these fiduciary duties is a duty of care which is imposed upon management personnel and requires diligence and prudence in the management of a corporation's affairs.  *Floyd v. Hefner,* 556 F.Supp.2d 617, 633 (S.D. Tex. 2008) (*citing Gearhart Indus., Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 719 (5th Cir. 1984)).

34.   Case law has determined that the fiduciary duties owed by corporate officers and directors to the corporation meet the standard for a technical trust and therefore satisfy the existence of a fiduciary capacity for the purposes of §523(a)(4). *Macris v. Saxton (In re Saxton),* 2011 WL 2293320, at *7 (Bankr. N.D. Tex., June 8, 2011) (*citing Assurance Systems Corp. v. Jackson (In re Jackson*), 141 B R. 909, 915–16 (Bankr. N.D. Tex.1992)); see also *Harwood*, 404 B.R. at 393.

35.   Though limited liability companies are not corporations in the strictest sense, and though Texas law implies, but does not explicitly state,[37] that the fiduciary status of corporate officers and directors and the corresponding three broad duties of such corporate officers and directors — the duty of due care, loyalty, and obedience[38] — applies to managers and/or members governing the activities of a limited

[37]   Among other topics, the limited liability company statutes in the Texas Business Organizations Code addresses indemnification of managers and members [§101.402] and interested transactions by managers and members [§101.255], in addition to specifying that duties and liabilities may be restricted or expanded by the company agreement [§101.401].

[38]   *See, e.g., Engenium Solutions, Inc. v. Symphonic Tech., Inc.*, 2013 WL 596584 at *30 (S.D. Tex., Feb. 15, 2013) (*citing Gearhart*, 741 F.2d at 719).

liability company, the imposition of those duties upon the management of a limited liability company under Texas law is appropriate and warranted.[39]

36.    The Defendant in this case acted in a fiduciary capacity as to ETRG.

37.    As to whether a defalcation was committed by the Defendant, a defalcation is a willful neglect of duty.  Thus, it is "a lesser standard than fraud and . . . does not require actual intent, as does fraud," and is "essentially a recklessness standard." *Schwager,* 121 F.3d at 185.

38.    "Willfulness in this context is measured objectively by reference to what a reasonable person in the debtor's position knew or reasonably should have known." *Harwood*, 637 F.3d at 624 (citing *Office of Thrift Supervision v. Felt (In re Felt)*, 255 F.3d 220, 226 (5th Cir. 2001).

39.    "Because willfulness is evaluated objectively, it charges the debtor with knowledge of the law without regard to an analysis of his actual intent or motive" and, accordingly, "the fiduciary is presumed to know his legal obligations."  *DT Credit Corp. v. Brock (In re Brock)*, 2008 WL 2954621 at *8 (Bankr. E.D. Tex., July 31, 2008), *citing Felt*, 255 F.3d at 226-27.

40.    Additionally, substantial jurisprudence establishes in this context that creating a debt by breaching a fiduciary duty is sufficient to constitute defalcation, even in the absence of evidence of bad faith.  *Randall v. Atkins (In re Atkins)*, 458 B.R. 858, 879 (Bankr. W.D. Tex. 2011); *Andrews v. Wells (In re Wells)*, 368 B.R. 506, 513 (Bankr. M.D. La. 2006); *Hearn v Goodwin (In re Goodwin)*, 355 B.R. 337, 345 (Bankr. M.D. Fla. 2006), and cases cited therein.

41.    The Defendant was charged with the duty of insuring that all required payments were made by ETRG to appropriate taxing authorities, including the United States Internal Revenue Service.[40]

---

[39]  *See, e.g.,* R. Hamilton, E. Miller & R. Ragazzo, 20 TEX. PRAC. SERIES: *Business Organizations* § 20:37 n.11 (Supp.2012) [referencing a "steadily growing body of case law" from numerous state supreme courts across the country recognizing fiduciary duties in the LLC context].

[40]  As recently summarized by the United States Tax Court, those payment obligations imposed upon virtually every employer can be described as follows:

An employer is subject to federal taxes on wages paid to employees.  An employer must pay a tax equal to 6.2% of wages for the Social–Security portion of the tax and 1.45% for the Medicare portion of the tax. Sec. 3111(a) and (b).  Another tax, computed at the same

42.   The Defendant's failure in each instance to tender required tax payments to the IRS on behalf of ETRG constituted a defalcation while acting in a fiduciary capacity as to ETRG.

43.   Thus, the debt owed by the Defendant to ETRG arising from his failure to tender required tax payments to the IRS, in the amount of $248,027.12, or in such other amount as ETRG might subsequently be required to pay to the IRS in order to satisfy its tax obligations owing for the period in which the Defendant acted as managing member of ETRG, is therefore excepted from discharge as a debt arising from a defalcation by a fiduciary pursuant to 11 U.S.C. §523(a)(4).

44.   Turning to the request by the individual Plaintiffs that any amount that they are required to pay to satisfy the accrued IRS tax liabilities should be rendered as a non-dischargeable debt, it must be noted that there is a significant difference between a manager's fiduciary relationship to the LLC and his relationship to fellow members.

45.   It is widely recognized that "there is no formal fiduciary relationship created as a matter of Texas law between members of a limited liability company." *Federal*

---

rates [6.2% and 1.45%], falls on employees. Sec. 3101(a) [6.2% Social–Security tax on wages received by employees] and (b) [1 .45% Medicare tax on wages received by employees]. Both the tax on employers and the tax on employees are referred to as the FICA, "Federal Insurance Contributions Act", tax. *See McDonald v. S. Farm Bureau Life Ins. Co.,* 291 F.3d 718, 721 (11th Cir.2002). In addition, an employer must withhold the employee share of FICA from the wages paid and must pay the withheld amount to the IRS. Sec. 3102(a) [the employee share of FICA must be collected by the employer by deducting and withholding the amount of tax from wages as paid] and (b) [every employer required to deduct the employee share of FICA is liable for payment of the employee share of FICA]. Moreover, an employer is obligated to withhold from wages amounts for the income taxes owed by its employees and must pay the withheld amount to the IRS. Secs. 3402(a)(1) ["every employer making payment of wages shall deduct and withhold upon such wages a tax determined in accordance with tables or computational procedures prescribed by the Secretary [of the Treasury]"], 3403 [every employer that is required to deduct income tax is liable for payment of the deducted amount]. Once net wages are paid to the employee, the IRS credits the employee with the taxes withheld, even if the employer does not pay over the withheld amount to the IRS. *See Slodov v. United States,* 436 U.S. 238, 243, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). The term "employment taxes" refers to all three of the employer's obligations that we have just discussed: (1) employer share of FICA, (2) employee FICA withholding, and (3) income-tax withholding. *See supra* part 2. The term "trust-fund taxes" refers to the last two obligations. *See Pollack v. Commissioner,* 132 T.C. 21, 25 n. 10, 2009 WL 349743 (2009).

*Romano-Murphy v. Comm'r,* T.C.M. 2012-330, 2012 WL 5992818, at *22 (Nov. 29, 2012).

*Ins. Co. v. Rodman, LLC*, 2011 WL 5921529 at *3 (N.D. Tex., Nov. 28, 2011); *Entm't Merchandising Tech., LLC v Houchin*, 720 F.Supp.2d 792, 797 (N.D. Tex. 2010).

46.   The formal designation of the Defendant in the LLC Regulations as the "Tax Matters Member" has no legal significance in the absence of a demonstration that the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA") applied to this particular LLC.[41]

47.   The Defendant had no formal fiduciary relationship with either of the individual Plaintiffs.

48.   A second category under which a fiduciary capacity is recognized under Texas law is an informal fiduciary relationship or a "confidential relationship" that may arise from moral, social, domestic, or personal relationships in which one person trusts in and relies on another. *Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 176 (Tex.1997); *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594-95 (Tex. 1992); *superseded by statute on other grounds as noted in Subaru of Am. Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225-26 (Tex. 2002); *In re Estate of Abernethy*,  2012 WL 1943760, at * 4 (Tex. App.– El Paso, May 30, 2012).

49.   "A fiduciary relationship exists when the parties are under a duty to act or give advice for the benefit of another upon matters within the scope of the relationship." *Wellogix, Inc. v. Accenture, LLP*, 788 F.Supp.2d 523, 544 (S.D. Tex. 2011) (*citing Stephanz v. Laird*, 846 S.W.2d 895, 901 (Tex. App. – Houston [1st Dist.] 1993, pet. denied)).

---

[41]   26 U.S.C. §§6221-34.  TEFRA was enacted to provide consistency in the treatment of partnership items through a single unified proceeding.  It is designed to make a single tax determination which are binding on all partners in a partnership and to prevent inconsistent and inequitable income tax treatment between various partners of the same partnership resulting from conflicting determinations as to each individual partner.  It became necessary in light of the growth of partnership syndications across state lines which dramatically increased the risk of such inconsistent tax rulings arising from multiple determinations. *See, e.g., Nevada Partners Fund, LLC ex rel. Sapphire II, Inc. v. U.S.*, 714 F.Supp.2d 598, 621 (S.D. Miss. 2010).  A "tax matters partner" is the person or entity designated by the partnership to represent it in its dealings with the IRS and the person or entity with primary responsibility for assuring that partners and indirect partners are kept informed of IRS actions.  26 U.S.C. §6231(a)(7). *Walthall v. U.S.*, 911 F. Supp. 1275, 1278 n.2 (D. Alaska 1995).  The small partnership exception may very well exempt the members of this LLC from the application of TEFRA.  26 U.S.C. §6231(a)(1)(B).

50.  Such a relationship "exists where a special confidence is placed in another who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one placing confidence." *American Medical Intern., Inc. v. Giurintano,* 821 S.W.2d 331, 339 (Tex. App.– Houston [14th Dist.] 1991, no pet.).

51.  "The law recognizes the existence of confidential relationships in those cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed." *Crim Truck,* 823 S.W.2d at 594, (*citing Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex.1980)).

52.  "The effect of imposing a fiduciary duty is to require the fiduciary party to place someone else's interests above its own." *Lindley v. McKnight*, 349 S.W.3d 113, 124 (Tex. App.– Fort Worth 2011, no pet.).

53.  Accordingly, "a fiduciary relationship is an extraordinary one and will not be lightly created; the mere fact that one subjectively trusts another does not, alone, indicate that he placed confidence in another in the sense demanded by fiduciary relationships because something apart from the transaction between the parties is required." *American Medical Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 339 (Tex.App.-Houston 1991, no pet.).

54.  The Defendant had no informal fiduciary relationship with either of the individual Plaintiffs.

55.  Thus, any asserted liability of the Defendant to either of the individual Plaintiffs created by the Defendant's actions or omissions regarding his duty to tender required tax payments to the IRS on behalf of ETRG cannot be declared non-dischargeable as to the individual Plaintiffs arising as a result of the Defendant's fraud or defalcation while acting in a fiduciary capacity.

56.  "Embezzlement is defined for the purposes of §523(a)(4) as the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come."[42]  *Id.*

57.  "Embezzlement, however, is not limited to situations in which one person is entrusted with the property of another.  It also applies where . . . a person lawfully

---

[42]  "Both larceny and embezzlement involve the fraudulent appropriation of property; they differ only in timing.  Larceny applies when a debtor unlawfully appropriates property at the outset, whereas embezzlement applies when a debtor unlawfully appropriates property after it has been entrusted to the Debtor's care." *Rainey v. Davenport (In re Davenport),* 353 B.R. 150, 199 (Bankr. S.D. Tex. 2006).

obtains property, but then fraudulently appropriates it for his or her own use." *Powers v. Caremark, Inc. (In re Powers)*, 261 Fed. Appx. 719, 723 (5th Cir. 2008).

58.    "Given that a debtor has lawful control of the property, embezzlement then requires three elements: (1) appropriation of funds by the debtor; (2) for the debtor's use or benefit; and (3) with fraudulent intent." *Rainey v. Davenport (In re Davenport),* 353 B.R. 150, 200 (Bankr. S.D. Tex. 2006).

59.    Fraudulent intent is "an intent to deceive another person and thereby induce such other person to transfer, alter or terminate a right with respect to property." *Winn v. Holdaway (In re Holdaway)*, 388 B.R. 767, 778 (Bankr. S.D. Tex. 2008).

60.    "Fraudulent intent may be inferred from the conduct of the Debtor and from circumstances of the situation." *Int'l Beauty Products, LLC v. Beveridge (In re Beveridge)*, 2009 WL 2591143, at *10 (Bankr. N.D. Tex. Aug. 18, 2009) (citations omitted).

*Nondischargeability Under 523(a)(2)(A): Debt Arising by False Representation, False Pretenses, or Actual Fraud.*

61.    The individual Plaintiffs, Dan Tomlin and Mark Scott, also seek a determination that the amounts that each of them invested into ETRG Resources, LLC as a result of the solicitations tendered to them by the Defendant should be declared non-dischargeable as a debt arising from a false representation, false pretenses or actual fraud.

62.    11 U.S.C. §523(a)(2)(A) of the Bankruptcy Code provides that:

> a discharge under §727 of this title does not discharge an individual debtor from any debt for money, property, or services, ... to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

63.    Section 523(a)(2)(A) encompasses similar but distinct causes of action.  Though other circuits have applied a uniform standard to all § 523(a)(2)(A) actions,[43] the

---

[43]    *See, e.g., Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991); *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987).  Though some bankruptcy courts outside of the Fifth Circuit have cited the decision of the United States Supreme Court in *Field v. Mans*, 516 U.S.

Fifth Circuit has distinguished the elements of "actual fraud" and of "false pretenses and false representations." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995).

64.   The distinction recognized by the Fifth Circuit appears to be a chronological one, resting upon whether a debtor's representation is made with reference to a future event, as opposed to a representation regarding a past or existing fact. *Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir.1991) [A debtor's promise ... related to a future action which does not purport to depict current or past fact ... therefore cannot be defined as a false representation or a false pretense].[44]

65.   Because any representation by the Defendant that might have induced either individual plaintiff to invest in ETRG must necessarily have pertained to a future event since ETRG had not yet been engaged in the restaurant business at the time of the solicitation, any statement made by the Defendant cannot be properly characterized as a false representation or a false pretense in this Circuit.

66.   Thus, the validity of each individual Plaintiff's claim in this case rests upon sufficient proof that the debt was obtained by actual fraud.

67.   To have a debt excepted from discharge pursuant to the "actual fraud" provision in § 523(a)(2)(A), an objecting creditor must prove that:

---

59, 116 S.Ct. 437, 133 L.Ed.2d 351(1995), in support of their proposition that all of the §523(a)(2)(A) actions are governed by the elements for actual fraud, *see, e.g., AT&T Universal Card Services v. Ellingsworth (In re Ellingsworth)*, 212 B.R. 326 (Bankr. W.D. Mo. 1997); *AT& T Universal Card Services v. Alvi (In re Alvi)*, 191 B.R. 724 (Bankr. N.D. Ill. 1996); the Supreme Court in that case was actually distinguishing the language used in §523(a)(2)(A) from that utilized in §523(a)(2)(B) in order to determine the degree of reliance necessary above mere reliance in fact in order to exempt a debt from discharge under (a)(2)(A). Since the Supreme Court specifically refused to even apply their direct holding regarding the degree of reliance in actual fraud cases to cases of false pretense or false representation, 116 S.Ct. at 443, n. 8, the statement that the Court erased all distinctions between the three (a)(2)(A) actions strains credibility.

[44]   While "false pretenses" and "false representation" both involve intentional conduct intended to create and foster a false impression, the distinction is that a false representation involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement. *See Walker v. Davis (In re Davis)*, 377 B.R. 827, 834 (Bankr. E.D. Tex. 2007); and *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003). In order for a debtor's representation to constitute a false pretense or a false representation, it "must have been: (1) [a] knowing and fraudulent falsehood, (2) describing past or current facts, (3) that [was] relied upon by the other party." *In re Allison*, 960 F.2d at 483; *see also In re Bercier*, 934 F.2d at 692 ["to be a false representation or false pretense under § 523(a)(2), the false representations and false pretenses must encompass statements that falsely purport to depict current or past facts"].

(1) the debtor made representations;

(2) at the time they were made the debtor knew they were false;

(3) the debtor made the representations with the intention and purpose to deceive the creditor;

(4) the creditor justifiably relied on such representation; and

(5) the creditor sustained losses as a proximate result of the representations.

*Pentecost*, 44 F.3d at 1293, *as modified by the United States Supreme Court decision of Field v. Mans*, 516 U.S. 59 (1995) [regarding the proper standard of reliance].

68.   However, as a general rule, a party's failure to perform the terms of a contract is a breach of contract, not a tort, *IKON Office Solutions, Inc. v. Eifert*, 125 S.W.3d 113, 130 (Tex. App.– Houston [14th Dist.] 2003, pet. denied) and a debt arising from a breach of contract normally does not fall within the realm of nondischargeability under §523(a).

69.   It is widely recognized that "[a] promise to perform acts in the future is not a qualifying misrepresentation merely because the promise subsequently is breached." *Woo, Inc. v. Donelson (In re Donelson)*, 410 B.R. 495, 503 (Bankr. S.D. Tex. 2009) (citing *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992)).

70.   Thus, a breach of contract "is not sufficient to make a debt non-dischargeable, even though there is no excuse for the subsequent breach." *Turbo Aleae Inv., Inc. v. Borschow (In re Borschow)*, 454 B.R. 374, 395 (Bankr. W.D. Tex. 2011), citing *Bercier*, 934 F.2d at 692.

71.   Similarly, "[t]he generally accepted rule in Texas jurisprudence is that future predictions and opinions, especially those regarding the future profitability of a business, cannot form a basis for fraud as a matter of law." *Zar v. Omni Indus., Inc.*, 813 F.2d 689, 693 (5th Cir. 1987); *Peacock v. Carpedia Int'l, Ltd.*, 2012 WL 1965675 at *7 (S.D. Tex., May 31, 2012).

72.   Because the Court concludes that the individual Plaintiffs have each failed to prove his respective cause of action against the Defendant for actual fraud by a preponderance of the evidence, judgment must be rendered for the Debtor-Defendant on those claims.

73.   On the basis of the partial summary judgment previously granted to Plaintiff, ETRG Investments, LLC, and pursuant to the analysis and authorities expressed on

the record by this Court on June 20, 2012 in support of its decision on that summary judgment motion, all of which is incorporated herein by reference as if fully set forth herein, the debt of $253,331.39 owed by the Defendant, James H. Hardee, to Plaintiff, ETRG Investments, L.L.C., is hereby excepted from discharge as a debt arising from a defalcation by a fiduciary and from embezzlement pursuant to 11 U.S.C. §523(a)(4).

74.    For the reasons set forth herein, the indebtedness owed by the Defendant, James H. Hardee, to Plaintiff, ETRG Investments, L.L.C., arising from his failure to tender required tax payments to the United States Internal Revenue Service, whether in the amount of $248,027.12, or in such other subsequently revised amount as ETRG is required to tender to the IRS in order to satisfy its tax obligations owing for the period in which the Defendant acted as managing member of ETRG, is therefore excepted from discharge as a debt arising from a defalcation by a fiduciary pursuant to 11 U.S.C. §523(a)(4).

75.    For the reasons set forth herein, all relief requested in the Complaint by the individual Plaintiffs, Dan Tomlin and Mark Scott, is denied.

76.    To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

77.    An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 03/14/2013

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE